**ORIGINAL**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------------------------------X
In re:                                          : Chapter 11
                                                :
BUTLER SERVICES                                 : Case No. 09-11914 (KJC)
INTERNATIONAL, INC., *et al.*,[1]               :
                                                : (Jointly Administered)
                   Debtors.                     :
                                                : **Ref. Docket No. 19**
---------------------------------------------------------------X

## ORDER (I) APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL INTERESTS; (II) ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES; AND (III) GRANTING RELIEF REQUESTED

Upon the motion (D.I. 19; the "Motion")[2] of the above-captioned debtors and debtors in possession in the above-captioned jointly administered cases (collectively, the "Debtors"), for entry of orders under Bankruptcy Code 105, 363, and 365 and Bankruptcy Rules 2002, 6004, and 6006 (I) (A) approving procedures in connection with soliciting bids (the "Bidding Procedures") for a sale (the "Sale") of the Purchased Assets, (B) authorizing the Debtors to enter into a stalking horse agreement in connection with the Sale of the Purchased Assets, (C) approving certain Bid Protections (as defined below) in connection therewith, (D) approving the form and manner of sale notice (the "Notice Procedures") and (E) scheduling Auction and Sale Hearing dates (each as defined herein); (II) approving the Sale of the Purchased Assets free and clear of all interests; (III) assumption and assignment of Assumed Contracts; and (IV) granting related relief; and the Court having entered an order approving, among other things, the Bidding

---

[1] The Debtors in these cases, along with the last four digits of each of the Debtor's federal tax identification number, are: Butler Services International, Inc. (1282); Butler International, Inc. (4321); Butler of New Jersey Realty Corp. (7593); Butler Service Group, Inc. (2289); Butler Publishing, Inc. (1211); Butler Telecom, Inc. (3416); Butler Utility Service, Inc. (8023); Butler Services, Inc. (5420); and Butler Resources, LLC (3504). The current mailing address for each of the Debtors is 200 E. Las Olas Blvd., Suite 1730, Ft. Lauderdale, FL 33301.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Agreement (as defined herein).

{BAY:01339118v1}                           1

Procedures (D.I. 76; the "Bidding Procedures Order"); based upon the evidence presented at the bidding procedures hearing held on June 12, 2009 (the "Bidding Procedures Hearing");and the Court having conducted a hearing on the Motion on June 29, 2009 (the "Sale Hearing"); and all parties in interest having been heard, or having had the opportunity to be heard, regarding the agreement attached hereto as Exhibit 1 (the "Agreement"), by and among the Debtors and Butler America LLC (the "Purchaser") and the transactions contemplated thereby (the "Transactions"); and the Court having reviewed and considered the Motion, and the arguments of counsel made, and the evidence adduced, at the Bidding Procedures Hearing and the Sale Hearing; and upon the record of the Bidding Procedures Hearing and the Sale Hearing and these chapter 11 cases, and after due deliberation thereon, and good cause appearing therefore it is hereby

FOUND AND DETERMINED THAT:[3]

    A.    The Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. § 157(b) (1) and 1334 (b).

    B.    Venue of these cases and the Motion in this district is proper under 28 U.S.C. § 1408 and 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b) (2).

    C.    The statutory predicates for the relief requested in the Motion are Bankruptcy Code sections 105, 363 and 365 and Bankruptcy Rules 2002, 6004 and 6006.

    D.    Notice of the Motion and entry of the Sale Order has been provided to (A) (i) all entities reasonably known to have expressed an interest in a transaction with respect to the Purchased Assets during the past nine (9) months, (ii) all entities reasonably known to have asserted any interest in the Purchased Assets, (iii) the attorney generals for all fifty (50) states, all

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

federal, state, and local regulatory or taxing authorities or recording offices, including (without limitation) the SEC, the EPA and all regional offices, state environmental protection agencies, the IRS, and the Department of Labor and similar state labor or employment agencies, (iv) all parties entitled to notice pursuant to Local Bankruptcy Rule 2002-1(b), (v) all of the Debtors' landlords; (vi) all counterparties to the Contracts and Leases; and (vii) all known or potential creditors and (B) other parties through publication of the Sale Notice, all in accordance with and as provided by the Bidding Procedures Order.

E. Based upon the affidavits of service and publication filed with the Court: (a) notice of the Motion and the Sale Hearing was adequate and sufficient under the circumstances of these chapter 11 cases and these proceedings and complied with the various applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Bidding Procedures Order; and (b) a reasonable opportunity to object and be heard with respect to the Motion and the relief requested therein was afforded to all interested persons and entities.

F. The Purchased Assets are property of the Debtors estates' and title thereto is vested in the Debtors' estates.

G. The Debtors and their professionals marketed the Purchased Assets and conducted the marketing and sale process as set forth in and in accordance with the Motion. Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Purchased Assets.

H. On May 29, 2009, the Debtors entered into an asset purchase agreement with respect to the Purchased Assets by and among the Debtors and Butler America LLC, as the stalking horse bidder, subject to higher and better offers.

I. The Bidding Procedures were substantively and procedurally fair to all parties. The Debtors conducted the Sale process in accordance with the Bidding Procedures.

J. Pursuant to the terms of the Bidding Procedures Order, if a Qualified Bid (as defined in the Bidding Procedures) (other than that of Purchaser) had been received by the Bid Deadline (as defined in the Bidding Procedures), the Auction would have taken place on June 27, 2009 at 10:00 a.m. (Eastern) at the offices of Moses & Singer LLP, The Chrysler Building, 405 Lexington Avenue, New York, NY 10174. However, since no Qualified Bid (other than that of Purchaser) was received, the Auction was cancelled.

K. Subject to the entry of this Order, each Debtor (i) has full power and authority to execute the Agreement and all other documents contemplated thereby, and the sale of the Purchased Assets by the Debtors has been duly and validly authorized by all necessary company action of each of the Debtors, (ii) has all of the power and authority necessary to consummate the Transactions contemplated by the Agreement, (iii) has taken all company action necessary to authorize and approve the Agreement and the consummation by the Debtors of the Transactions. No consents or approvals, other than those expressly provided for in the Agreement or this Order, are required for the Debtors to close the Sale and consummate the Transactions.

L. The Agreement and the Transactions were negotiated and have been and are undertaken by the Debtors and the Purchaser at arms' length without collusion or fraud, and in good faith within the meaning of Bankruptcy Code section 363 (m). As a result of the foregoing, the Debtors and the Purchaser are entitled to the protections of section 363(m) of the Bankruptcy Code.

M. The total consideration provided by the Purchaser for the Purchased Assets is the highest and best offer received by the Debtors, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act, and (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Purchased Assets.

N. The Purchaser would not have entered into the Agreement and would not consummate the Transactions, thus adversely affecting the Debtors, their estates and creditors, if the sale of the Purchased Assets to the Purchaser was not free and clear of all Interests (as defined herein), or if the Purchaser would, or in the future could, be liable for any of such Interest. A sale of the Purchased Assets other than one free and clear of all Interests would adversely impact the Debtors' estates, and would yield substantially less value for the Debtors' estates, with less certainty than the Sale. Therefore, the Sale contemplated by the Agreement is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

O. The Debtors may sell the Purchased Assets free and clear of all Interests, because, with respect to each creditor asserting an Interest, one or more of the standards set forth in Bankruptcy Code § 363(f) (1)-(5) has been satisfied. Those holders of Interests who did not object or who withdrew their objections to the Sale or the Motion are deemed to have consented to the Motion and Sale pursuant to Bankruptcy Code § 363(f) (2). Those holders of Interests who did object fall within one or more of the other subsections of Bankruptcy Code Section 363(f).

P. Neither the Debtors nor Purchaser engaged in any conduct that would cause or permit the Agreement or the consummation of the Transactions to be avoided, or costs or damages to be imposed, under Section 363(n) of the Bankruptcy Code.

Q. The Purchaser is not holding itself out to the public as a continuation of the Debtors and is not an "insider" or "affiliate" of any of the Debtors.

R. The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign Assumed Contracts to Purchaser in connection with the consummation of the Sale, and the assumption, assignment, and sale of Assumed Contracts is in the best interests of the Debtors, their estates, their creditors, and all parties in interest. Assumed Contracts being assigned to Purchaser are an integral part of Purchased Assets being purchased by Purchaser, and accordingly, such assumption, assignment, and sale of Assumed Contracts are reasonable, enhance the value of the Debtors' estates, and do not constitute unfair discrimination. The Undisputed Cure Amount and any portion of Disputed Cure Amount mutually agreed to be paid by Purchaser and the counterparty to the applicable Assumed Contract or ordered to be paid by this Court pursuant to a Final order (the "Cure Amount) are deemed the entire cure obligation due and owing under the Assumed Contracts under Bankruptcy Code section 365.

S. Each and every provision of the Assumed Contracts or applicable non-bankruptcy law that purport to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning, assignment of any Assumed Contract are unenforceable under Bankruptcy Code section 365.

T. Upon the payment of the Undisputed Cure Amount and escrow or other security of the Disputed Cure Amount, there are no outstanding defaults of the Debtors and their estates under the Assumed Contracts.

U. The Purchaser has demonstrated adequate assurance of future performance of all Assumed Contracts within the meaning of Bankruptcy Code section 365.

V. Upon the assignment and sale to the Purchaser, the Assumed Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order.

W. Entry into the Agreement and consummation of the Transactions constitute the exercise by the Debtors of sound business judgment and such acts are in the best interests of the Debtors, their estates and creditors, and all parties in interest. The Court finds that the Debtors have articulated good and sufficient business reasons justifying the Sale of the Purchased Assets to Purchaser. Additionally, (i) the Agreement constitutes the highest and best offer for the Purchased Assets; (ii) the Agreement and the closing thereon will present the best opportunity to realize the value of the Purchased Assets and avoid further decline and devaluation of the Purchased Assets; (iii) there is substantial risk of deterioration of the value of the Purchased Assets if the Sale is not consummated promptly; and (iv) the Agreement and the closing thereon will provide a greater recovery for the Debtors' creditors than would be provided by any other presently available alternative.

X. The Sale does not constitute a *sub rosa* chapter 11 plan.

Y. Time is of the essence in consummating the Sale. In order to maximize the value of the Debtors' assets, it is essential that the sale of the Purchased Assets occur within the time constraints set forth in the Agreement. Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004 and 6006.

Z.   The Sale contemplated by the Agreement is in the best interests of the Debtors and their estates, creditors, interest holders and all other parties in interest; and it is therefore

ORDERED, ADJUDGED AND DECREED THAT:

1. The relief requested in the Motion is GRANTED as modified herein.

2. All objections with regard to the relief sought in the Motion that have not been withdrawn, waived, or settled, are hereby overruled on the merits.

3. Pursuant to Bankruptcy Code sections 105 and 363, the Agreement, the Sale of the Purchased Assets, and consummation of the Transactions are hereby approved and authorized in all respects.

4. Notwithstanding any provision of any Assumed Contract or applicable non-bankruptcy law to the contrary, under section 365 of the Bankruptcy Code, the Debtors are authorized to assume the Assumed Contracts and to assign the Assumed Contracts to the Purchaser, which assignment shall take place on and be effective as of the Closing.

5. Pursuant to Bankruptcy Code sections 363(b) and 363(f), upon the consummation of Transactions contemplated by the Agreement and effective as of the Closing, all of the Debtors' right, title, and interest in the Purchased Assets, including (without limitation) the Assumed Contracts, shall be transferred to the Purchaser, and the Purchaser shall be vested with good and marketable title to such Purchased Assets, including (without limitation) the Assumed Contracts, free and clear of all interests, including (without limitation) all liens, including (without limitation) liens associated with taxes (including (without limitation) the Taxes), mortgages, security interests, charges, easements, leases, subleases, covenants, rights of

way, options, claims, restrictions, or encumbrances of any kind (collectively, the "Liens") and all debts, claims, pending litigation, taxes (including (without limitation) the Taxes), WARN Act claims or liability, adverse claims, liabilities, commitments, responsibilities, and obligations of any kind or nature whatsoever, direct, indirect, absolute, or contingent, matured, or unmatured, whether accrued, vested, or otherwise, whether known or unknown, foreseen or unforeseen, and whether or not actually reflected, or required to be reflected, in a party's balance sheets or other books and records (collectively, the "Liabilities" and together with the Liens, the "Interests"), with all such Interests to attach to the cash proceeds of the Sale in the order of their priority and with the same validity, force, and effect that they had as against the Purchased Assets immediately before such transfer, subject to any claims and defenses the Debtors may possess with respect thereto.

6. Except as may be expressly provided in the Agreement, Purchaser is not assuming nor shall it or any affiliate of Purchaser be in any way liable or responsible, as a successor or otherwise, for any Interests in any way whatsoever relating to or arising from the Debtors' ownership or use of the Purchased Assets prior to the consummation of the Transactions contemplated by the Agreement, or any Interests calculable by reference to the Debtors or the Purchased Assets, or relating to continuing or other conditions existing on or prior to the Closing. For the avoidance of doubt, Purchaser shall not be considered a successor for unemployment insurance contribution rates or any other employer/employee obligations under any federal, state, or local statue or ordinance concerning employment and labor matters.

7. As of the Closing Date, subject to the provisions of this Order, the Purchaser shall succeed to the entirety of Debtors' rights and obligations in the Assumed

Contracts first arising and attributable to the time period occurring on or after the Closing and shall have all rights thereunder.

8. Upon the entry of this Order, (i) all defaults (monetary and non-monetary) under the Assumed Contracts through the Closing shall be deemed cured, (ii) no other amounts will be owed by the Debtors, their estates or the Purchaser with respect to amounts first arising or accruing during, or attributable or related to, the period prior to Closing, (iii) any and all persons or entities shall be forever barred and estopped from asserting a claim against the Debtors, their estates, or the Purchaser that any additional amounts are due or defaults exist under the Assumed Contracts that arose or accrued, or relate to or are attributable to the period prior to the Closing.

9. Pursuant to section 365(f) of the Bankruptcy Code, notwithstanding any provision to the contrary in the Assumed Contracts, or in applicable non-bankruptcy law, that prohibits, restricts, or conditions the assignment of the Assumed Contracts, the Debtors may assign the Assumed Contracts to the Purchaser.

10. Upon the assignment to the Purchaser, the Assumed Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order.

11. The Transactions have been undertaken by the Purchaser in good faith and the Purchaser is a good faith purchaser of the Purchased Assets as that term is used in Bankruptcy Code section 363 (m) . The Purchaser is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

12. Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors and the Purchaser are each hereby authorized to take any and all actions necessary or appropriate to:

(i) consummate the Sale of the Purchased Assets to Purchaser and the Closing of the Sale in accordance with the Motion, the Agreement and this Order; (ii) assume and assign the Assumed Contracts; and (iii) perform, consummate, implement and close fully the Agreement together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement.

13. Purchaser is hereby authorized in connection with the consummation of the Sale to allocate the Purchased Assets among its affiliates, designees, assignees, and/or successors in a manner as it in its sole discretion deems appropriate and to assign, sublease, sublicense, transfer or otherwise dispose of any of the Purchased Assets to its affiliates, designees, assignees, and/or successors with all of the rights and protections accorded under this Order and the Purchase Agreement, and the Debtors shall cooperate with and take all actions reasonably requested by Purchaser to effectuate any of the foregoing; provided, however, the Debtors shall be reimbursed by Purchaser for any reasonable expenses in connection therewith.

14. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale and the Transactions.

15. Upon the Closing, (a) the Debtors are hereby authorized and directed to consummate, and shall be deemed for all purposes to have consummated, the sale, transfer and assignment of the Purchased Assets to Purchaser free and clear of any and all Interests, with such Interests to attach to the Sale proceeds, and (b) except as otherwise expressly provided in the Agreement, all such Interests shall be and hereby are released, terminated and discharged as to the Purchaser and the Purchased Assets.

16. Upon the Closing, and except as otherwise expressly provided in the Agreement, Purchaser shall not be liable for any claims against, and Liabilities and obligations

of, the Debtors or any of the Debtors' predecessors or affiliates. Without limiting the generality of the foregoing, and except as otherwise provided in the Agreement, (a) Purchaser shall have no liability or obligation to pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any pension plans) or make any other payment to employees of the Debtors, (b) Purchaser, shall have no liability or obligation in respect of any collective bargaining agreement, employee pension plan, employee health plan, employee retention program, employee incentive program or any other similar agreement, plan or program to which any Debtors are a party (including, without limitation, liabilities or obligations arising from or related to the rejection or other termination of any such plan, program agreement or benefit), (c) Purchaser shall in no way be deemed a party to or assignee of any such employee benefit, agreement, plan or program, (d) and all parties to any such employee benefit, agreement, plan or program are enjoined from asserting against Purchaser any Claims arising from or relating to such employee benefit, agreement, plan or program.

17. Notwithstanding anything to the contrary in this Order or the Agreement:

(a) Subject to the satisfaction of all of the conditions set forth in subparagraph (b) below,

(i) the Debtors are hereby authorized to assume, pursuant to 11 U.S.C. § 365 (without further order of the Court): (a) two workers compensation insurance policies issued by ACE American Insurance Company and/or its affiliates (the "ACE Companies") to Butler International Inc. ("Butler") as the named insured, with an effective date of January 15, 2009, and expiring on January 15, 2010, and (b) the Casualty Program Proposal for Butler Effective January 15, 2009 (the "2009 Program Agreement"), which includes: (I) Notice of Election, (II) Limits and Coverages, (III) Proposal Conditions, (IV) Sample LOC, and (V) TRIA Disclosures (collectively, the "2009 ACE Policies and Agreements");

(ii) the Debtors are hereby authorized to assign (without further order of the Court) the 2009 ACE Policies and Agreements to the Purchaser;

(iii) the Debtors are authorized to enter into an assumption agreement by and among the Debtors, the Purchaser and the ACE Companies with respect to such assignment,

(iv) effective upon the assignment of the 2009 ACE Policies and Agreements, the Debtors' rights and interests in certain deductible reimbursement funds and other cash collateral in the aggregate amount of $1,153,469 ("2009 Deductible Funds") that were provided by the Debtors to the ACE Companies pursuant to the 2009 ACE Policies and Agreements shall be transferred and assigned to the Purchaser, but subject to the ACE Companies perfected security interests and liens. Effective upon such assignment, such 2009 Deductible Funds shall continue to secure the Purchaser's obligations and liabilities under the 2009 ACE Policies and Agreements and all of the Debtors' rights, title, and interests in such 2009 Deductible Funds shall terminate; and

(v) as a condition for the assignment of the 2009 ACE Policies and Agreements to the Purchaser, (a) the Purchaser shall have provided to the ACE Companies, at Purchaser's election (y) a letter of credit in the amount of $250,000 and in form and substance, reasonably acceptable to the ACE Companies and issued by a financial institution acceptable to the ACE Companies in their sole discretion (the "Purchaser LOC") or (z) additional cash collateral equal to $250,000 (the "Additional Cash Collateral") to secure the Purchaser's obligations under the 2009 ACE Policies and Agreements; and (b) upon the ACE Companies receipt of the Purchaser LOC or the Additional Cash Collateral and the satisfaction of the conditions for assignment of the 2009 ACE Policies and Agreements, set forth below, the ACE Companies shall agree to immediately reduce the existing letters of credit that were provided by the Debtors to the ACE Companies (collectively the "Butler LOCs") by $250,000; and the remaining balance of the Butler LOCs and all cash collateral provided by the Debtors to the ACE Companies (other than the 2009 Deductible Funds) (the "Remaining Deductible Funds") shall continue to secure the Debtors' obligations to the ACE Companies under all of the insurance policies issued by the ACE Companies to Butler and its affiliates and related agreements (other than the 2009 ACE Policies and Agreements assigned to the Purchaser).

(b) The assumption and assignment of the 2009 ACE Policies and Agreements shall not be effective unless and until the Debtors and the Purchaser have satisfied all of the following conditions precedent to such assignment:

(i) the Purchaser, the Debtors and the ACE Companies shall have executed an assumption agreement and a collateral and payment agreement (the "New Agreements"), each in form and substance reasonably satisfactory to the ACE Companies, the Debtors, and the Purchaser,

(ii) the Purchaser shall have delivered, or caused to be delivered to the ACE Companies, the Purchaser LOC or the Additional Cash Collateral; and

(iii) the Purchaser and the Debtors shall have closed the Sale under the

Agreement.

(c) Upon satisfaction of the conditions set forth in paragraph (b) above:

(i) the 2009 ACE Policies and Agreements shall be deemed to be "Purchased Assets";

(ii) Purchaser shall assume all liabilities of the Sellers under the 2009 ACE Policies and Agreements arising at any time (whether before or after the Closing (as such term is defined in the Purchase Agreement)) and shall have all of the rights, duties, liabilities, obligations and benefits under the 2009 ACE Policies and Agreements; and

(iii) Upon the assumption and assignment of the 2009 ACE Polices and Agreements to the Purchaser, the Debtors shall have no further obligations thereunder pursuant to section 365(k) of the Bankruptcy Code; provided that, notwithstanding the foregoing, (a) the Debtors – to the extent they possess relevant records and it is feasible given their wind-down status -- will cooperate with the ACE Companies in providing information reasonably necessary for premium audits or claims handling under the 2009 ACE Polices and Agreements ,and (b) all right, title and interest of the Debtors in the 2009 ACE Policies and Agreements, the collateral thereunder and the proceeds thereof shall terminate.

(d) Notwithstanding anything to the contrary herein, in the 2009 ACE Policies and Agreements, or in any other agreement between the ACE Companies and any of the Debtors, effective upon satisfaction of the conditions set forth in subparagraph (b) of this paragraph 17 of this Order, the 2009 Deductible Funds and the Purchaser LOC (or Additional Cash Collateral, as the case may be) shall only secure the obligations previously, now, or hereafter arising under the 2009 ACE Policies and Agreements and the New Agreements; provided, further, that the ACE Companies shall not and will not seek payment or reimbursement from the 2009 Deductible Funds and the Purchaser LOC (or Additional Cash Collateral, as the case may be) on account of the Debtors' obligations or liabilities arising under policies or agreements with the ACE Companies (other than the 2009 ACE Policies and Agreements and the New Agreements); provided, further, that the ACE Companies shall not and will not seek payment or reimbursement from the Butler LOCs and the Remaining Deductible Funds on account of the Purchaser's obligations or liabilities arising under the 2009 ACE Policies and Agreements and the New Agreements.

18. Effective upon Closing, the Purchaser shall succeed to all of the Debtors' rights, title, ownership, and interests in and to (i) Debtors' lockboxes and lockbox accounts with Bank of America, N.A., and (ii) deposits in and to any such lockboxes or lockbox accounts with Bank of America, N.A.; provided, that nothing herein shall affect the Debtors' rights, title, ownership, and interests in and to any other account the Debtors have with Bank of America,

N.A. or any other financial institution. Upon Closing, Bank of America, N.A. is hereby authorized to redirect all deposits to the Debtors' lockboxes or in the Debtors' lockbox accounts to the Purchaser. The Debtors are hereby authorized and directed to enter into and execute any and all agreements with Bank of America, N.A. and/or the Purchaser to facilitate or evidence the transfer of such rights, title, ownership, and interests, all without further order of this Court. For the avoidance of doubt, effective upon Closing, the Debtors' lockboxes and lockbox accounts with Bank of America, N.A., and all deposits in and to any such lockboxes or lockbox accounts with Bank of America, N.A. shall constitute Purchased Assets under the Agreement.

19. On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of all of the Purchased Assets and a bill of sale transferring good and marketable title in such Purchased Assets to Purchaser on the Closing Date pursuant to the terms of the Agreement.

20. Except as otherwise provided in the Agreement, any and all Purchased Assets in the possession or control of any person or entity, including, without limitation, any vendor, supplier or employee of the Debtors shall be transferred to Purchaser free and clear of all Interests and shall be delivered at the time of Closing to Purchaser.

21. On the Closing Date, good and marketable title to the Purchased Assets shall be deemed transferred to the Purchaser free and clear of all Interests.

22. This Order is and shall be binding upon and govern the acts of all entities, including, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to

accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Purchased Assets conveyed to Purchaser. All such entities described above in this paragraph are authorized and specifically directed to strike all recorded Interests against the Purchased Assets from their records, official and otherwise.

23. All counterparties to the Assumed Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, and shall not charge the Purchaser for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity.

24. Each and every federal, state and governmental agency or department, and any other person or entity, is hereby directed to accept any and all documents and instruments associated with the Transactions contemplated by the Agreement in lieu of any other documents or instruments required by such federal, state and governmental agency or department.

25. Immediately prior to Closing: (a) the Debtors shall be authorized to use cash collateral or advances under the DIP Credit Agreement (subject to the terms of the DIP Credit Agreement) to fund, without duplication, various accounts (the "Accounts") to be maintained by the Debtors following the closing date for accrued and unpaid expenses including amounts accrued, but unpaid, for fees and expenses of the Debtors' and Committee's professionals and Committee member expenses as of the Closing Date after application of all pre-petition retainers (including but not limited to, any success or restructuring or similar fees to be paid) and such other expenses in amounts to be agreed upon by the Debtors and the DIP Agent, with the consent of the Committee and the Second Lien Agent. Notwithstanding anything in the Agreement, the Accounts and funds in them shall not be Purchased Assets under

the Agreement. In connection with funding of the Accounts, unless otherwise agreed in writing between the DIP Agent and Purchaser, (i) the sale proceeds paid by the Purchaser shall be disbursed in the following order: (a) an amount equal to the obligations under the DIP Credit Agreement to the DIP Agent, on behalf of the DIP Lenders, to pay all obligations indefeasibly in full in cash, including cash collateralization of all letters of credit in accordance with the terms of the DIP Credit Agreement, but only to the extent any issued and outstanding letters of credit are not otherwise assumed, reissued or replaced, (b) an amount equal to the obligations under the first lien credit facility, to the First Lien Agent, on behalf of the First Lien Lenders, to pay all obligations indefeasibly in full in cash, if any, with the remaining balance of the Sale proceeds to be remitted to the Debtors; (ii) other than obligations that specifically survive termination pursuant and to the extent provided in the DIP Credit Agreement and the first lien credit agreement, such as any indemnification obligations, the DIP Credit Agreement and the first lien credit agreement shall each be terminated after such indefeasible payment in full in cash.

26. No governmental unit may revoke or suspend any right, license, trademark or other permission relating to the use of the Purchased Assets sold, transferred or conveyed to Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.

27. Unless the Purchaser, in its sole and absolute discretion, requests a further order of this Court, the Agreement and any related agreements, documents, or instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof, or as may otherwise be agreed to by the parties thereto, without further order of this Court. The Debtors are authorized to enter into such related agreements as they believe are necessary or appropriate to effectuate the Sale, including (without limitation) a transition

services agreement with the Purchaser on terms mutually agreeable to the Debtors and the Purchaser with notice to the DIP Agent. Upon Closing, the Debtors shall file with the Court a fully-executed and final version of the Agreement, as may be modified, amended, or supplemented, and all related agreements, documents, and instruments.

28. To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these chapter 11 cases, the terms of this Order shall govern. To the extent there is any inconsistency between the terms of this Order and the terms of the Agreement (including all ancillary documents executed in connection therewith), the terms of the Order shall govern.

29. Any amounts that become payable by the Debtors to Purchaser pursuant to the Agreement or any of the documents delivered by the Debtors pursuant to or in connection with the Agreement shall (a) constitute administrative expenses of the Debtors' estates and (b) be paid by the Debtors in the time and manner as provided in the Agreement without further order of this Court.

30. This Order shall not be modified by any chapter 11 plan confirmed in these chapter 11 cases or subsequent order of this Court unless expressly consented to in writing by Purchaser.

31. This Order and the Agreement shall be binding in all respects upon all creditors and interest holders of any of the Debtors, all non-debtor parties to the Assumed Contracts, the Committee, all successors and assigns of the Debtors and their affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtors' bankruptcy chapter 11 cases or upon a conversion to chapter 7 under the

Bankruptcy Code, and the Agreement shall not be subject to rejection or avoidance under any circumstances.

32. The failure specifically to include or make reference to any particular provisions of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement is authorized and approved in its entirety.

33. The Court retains jurisdiction, even after the closing of these chapter 11 cases, to: (1) interpret, implement and enforce the terms and provisions of this Order (including the injunctive relief provided in this Order) and the terms of the Agreement, all amendments thereto and any waivers and consents thereunder; (2) protect the Purchaser, or the Purchased Assets, from and against any of the Interests; (3) compel delivery of all Purchased Assets to Purchaser; and (4) resolve any disputes arising under or related to the Agreement, the Sale or the Transactions or Purchaser's peaceful use and enjoyment of the Purchased Assets.

34. This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004 or 6006 or any other provision of the Bankruptcy Code or Bankruptcy Rules is expressly lifted.

35. Nothing in this Order affects the parties rights under the terms of the Intercreditor Agreement, dated as of August 29, 2007, between General Electric Capital Corporation and Monroe Capital Management Advisors, LLC; provided, however, the parties consent and agree that upon entry of this Order, the First Lien Cap, as defined in the Intercreditor Agreement, shall be increased by an amount equal to $1,300,000 based upon funding of additional amounts for payroll and payroll taxes not included in the budget.

36. Nothing in this Order, or anything otherwise associated with the Sale, shall impair Mid Atlantic Technical Engineering PLLC's setoff or recoupment rights, if any, or the Debtors' or Purchaser's rights with respect thereto.

37. Upon the closing of the Asset Sale and payment of the Postpetition Indebtedness in full in cash and termination of the DIP Facility, the Debtors shall only be authorized to use Cash Collateral and other funds to pay expenses pursuant to the Budget (including any permitted of waived variances) to the extent such expense are accrued and unpaid as of the Asset Sale closing date pending further consent of the Second Lien Agent to pay such additional amounts or further order of this Court. The Debtors, the Committee, the Second Lien Agent and the Second Lien Lenders all reserve their rights whether any proceeds remaining from the final Advance made by the DIP Agent and DIP Lenders in connection with the closing of the Sale constitute Cash Collateral of the Second Lien Agent and Second Lien Lenders. To the extent that such monies constitute Cash Collateral, the Second Lien Agent and Second Lien Lenders consent to use of Cash Collateral in accordance with this paragraph. Any protections or rights afforded to the Second Lien Agent or Second Lien Lenders under this Order are expressly preserved and the Debtors and Committee expressly reserve their rights to challenge such protections or rights.

Dated: Wilmington, Delaware
~~June 30~~, 2009
July 1,

KEVIN J. CAREY
CHIEF UNITED STATES BANKRUPTCY JUDGE