# EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BUTLER SERVICES INTERNATIONAL, INC., et al.[1] | Case No. 09-11914 (KJC) |
| Debtors. | Jointly Administered |

## STIPULATION BY AND AMONG THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, MONROE CAPITAL ADVISORS LLC, AS AGENT FOR THE SECOND LIEN LENDERS, AND THE SECOND LIEN LENDERS

Butler Services International, Inc., and its affiliated debtors and debtors-in-possession in the above captioned Chapter 11 cases (collectively, the *"Debtors"*), the Official Committee of Unsecured Creditors (the *"Committee"*), and the Prepetition Second Lien Parties (defined below) stipulate and agree as follows:

WHEREAS, on June 1, 2009, (the *"Petition Date"*), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtors continue to manage their affairs and properties as debtors-in-possession. No trustee or examiner has been appointed in these cases.

WHEREAS, on June 10, 2009, the Committee was appointed in these cases by the Office of the United States Trustee for the District of Delaware, consisting of the following members:

---

[1] The Debtors in these cases, along with the last four digits of each of the Debtor's federal tax identification number, are: Butler Services International, Inc. (1282); Butler International, Inc. (4321); Butler of New Jersey Realty Corp. (7593); Butler Service Group, Inc. (2289); Butler Publishing, Inc. (1211); Butler Telecom, Inc. (3416); Butler Utility Service, Inc. (8023); Butler Services, Inc. (5420); and Butler Resources, LLC (3504).

Jerry Pittman & Associates; Cades Digitech Pvt. Ltd; and Mid-Atlantic Technical Engineering, LLC..

WHEREAS, on June 3, 2009, this Court entered Interim Order (I) Authorizing Debtors to Obtain Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing the Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (III) Granting Liens and Superpriority Claims, (IV) Granting Adequate Protection to the Prepetition Second Lien Secured Parties and (V) Scheduling a Final Hearing on the Debtors' Motion to Incur Such Financing on a Permanent Basis (the "*Interim DIP Order*"). [Doc. No. 48].

WHEREAS, on July 1, 2009, this Court entered Final Order (I) Authorizing Debtors to Obtain Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing the Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (III) Granting Liens and Superpriority Claims, (IV) Granting Adequate Protection to the Prepetition Second Lien Secured Parties and (V) Scheduling a Final Hearing on the Debtors' Motion to Incur Such Financing on a Permanent Basis (the "*Final DIP Order*"). [Doc. No. 209].

WHEREAS, pursuant to the terms of the Final DIP Order, the Debtors were authorized to enter into a $30 million DIP Facility (the "*DIP Facility*") with General Electric Capital Corporation ("*GE Capital*") and, in connection therewith, the Debtors stipulated, among other things, as to the validity and priority of the liens and claims of Monroe Capital Advisors LLC as agent (the "Prepetition Second Lien Agent") for MC Funding, LLC and Garrison Funding 2008-1 Ltd. (collectively the "*Prepetition Second Lien Lenders*" and, together with the Prepetition Second Lien Agent, the "*Prepetition Second Lien Parties*") and the Prepetition Second Lien Parties were granted Adequate Protection as provided therein. The stipulations of the Debtors in the Final DIP Order in respect of the liens and claims of the Prepetition Second Lien Parties are

incorporated herein by reference. The Final DIP Order further provided that all post-petition liens and adequate protection claims were subject to, *inter alia*, professional fees and expenses of the Committee in an amount up to $350,000 (the "*Committee Carveout*") as well as the budgeted fees and expenses of the other professionals retained by the Debtors pursuant to Court order

WHEREAS, on July 1, 2009, this Court entered an Order (I) Approving Sale of Substantially All of the Debtors' Assets Free and Clear of All Interests To Butler America LLC ("*Butler America*"); (II) Assumption and Assignment of Contracts and Leases; and (III) Granting Relief Requested (the "*Butler Sale Order*"), pursuant to which the Debtors sold substantially all of their operating assets pursuant to terms of that certain Asset Purchase Agreement (the "*Butler America Asset Purchase Agreement*") which was the subject of the Butler Sale Order (the "*Butler Sale*") [Doc. No. 208].

WHEREAS, on July 6, 2009, the Debtors closed the sale pursuant to the provisions set forth in the Butler Sale Order (the "*Butler Sale Closing Date*"). In accordance with the terms of the Sale Order and Final DIP Order, the Prepetition First Lien Lenders and DIP Lenders have received indefeasible payment in full from the proceeds of the Butler America Transaction of all Prepetition First Lien Obligations and DIP Obligations owed by the Debtors and have been released from any and all claims of the estates.

WHEREAS, on July 14, 2009, this Court entered an Order (i) Approving the Sale of Substantially All of the Debtors' Assets Used in the Chief Executive Magazine Business Free and Clear of All Interests; (ii) Assumption and Assignment of Certain Executory Contracts; and (iii) Granting Related Relief (the "*CEO Sale Order*"). [Doc. No. 232].

WHEREAS, on July 15, 2009, the Debtors closed the transaction pursuant to the CEO Sale Order. In accordance with the terms of the CEO Sale Order and Final DIP Order, the

Prepetition Second Lien Agent on behalf of the Prepetition Second Lien Lenders received the net sale proceeds from the closing of the transaction pursuant to the CEO Sale Order.

WHEREAS, following the Butler Sale Closing, the Debtors were in possession of cash on deposit in certain accounts (the "*Accounts*") funded pursuant to the final advance under the DIP Facility.

WHEREAS, pursuant to the Final DIP Order, the Debtors were granted the authority to use the fund in the Accounts to pay all accrued but unpaid budgeted expenses as of the Butler Sale Closing Date. The Debtors and the Committee agreed that no additional funds beyond the foregoing would be expended without the prior consent of the Prepetition Second Lien Agent.

WHEREAS, the Prepetition Second Lien Parties assert that the funds remaining in the Accounts constitute their Cash Collateral (the "*Disputed Cash Collateral*"). The Debtor and the Committee reserved their rights to dispute that such monies constitute the Cash Collateral of the Prepetition Second Lien Agent.

WHEREAS, on July 30, 2009, this Court entered the Stipulation and Order Authorizing Use of Cash in Which Second Lien Lenders and Second Lien Agent Claim an Interest and Preserving Parties' Rights (the "*Cash Collateral Order*"). [Doc. No. 271]. Pursuant to the Cash Collateral Order: (i) the Debtors were authorized to use the Disputed Cash Proceeds through September 4, 2009 for the payment of items as set forth in the Budget attached thereto to fund wind-down expenses; (ii) parties in interest, including the Committee, had until August 15, 2009 (the "*Investigation Termination Date*") to investigate the validity, perfection and enforceability of the Liens and claims of the Prepetition Second Lien Parties and their interest in the Disputed Cash Collateral; and (iii) the Prepetition Second Lien Parties were granted Adequate Protection (as defined and to the extent provided therein).

WHEREAS, pursuant to that Order of the Court dated July 30, 2009 (Doc. No. 282) and those stipulations dated July 30, 2009 and September 16, 2009 (Doc. No. 271) and (Doc. No. 339)(collectively, the "*Cash Collateral Extensions*"), the Debtors, Committee and Prepetition Second Lien Parties agreed to extend the use of cash collateral through and including November 30, 2009 on the terms set forth in the Cash Collateral Extensions and accompanying Budgets. Additionally, the Prepetition Second Lien Parties agreed that the Investigation Termination Date would be extended to September 18, 2009, and the Committee and the Debtors acknowledged that any such claims or challenges would be limited to Disputed Cash Proceeds, the Debtors' interest in refunds claimed in respect of certain workman's compensation policies and claims, if any, of the Debtors and the Debtors' estates, whether direct or derivative, against the Debtors' officers and directors (the "*Disputed Assets*").

WHEREAS, the parties subsequently agreed to extend the terms of the Cash Collateral Extensions to January 14, 2010;

WHEREAS, on July 20, 2009, this Court entered an Order (the "*Butler Real Estate Sale Order*"), pursuant to which the Debtors received authorization to sell their interests in certain real estate related assets in accordance with the terms of that Purchase and Sale Agreement, dated February 5, 2009 between the Debtors and Rockland Electric Company (the "*Butler Real Estate Transaction*").

WHEREAS, on November 3, 2009, the Debtors closed Butler Real Estate Transaction, and in accordance with the terms of the RE Sale Order and Cash Collateral Order, the net proceeds of the sale were paid to the Prepetition Second Lien Agent to reduce the claim of the Prepetition Second Lien Lenders.

WHEREAS, the Debtors' remaining assets consist of Avoidance Actions (as defined in the Final DIP Order), the Disputed Assets, and certain deposits, refunds or receivables (collectively, the *"Estate Assets"*). Collectively, the Estate Assets have an aggregate value substantially less than the outstanding secured claim, adequate protection lien and superpriority claims of the Prepetition Second Lien Lenders.

WHEREAS, RAS Management Advisors, LLC (*"RAS Management"*) has closely monitored the accrual of all claims entitled to administrative priority under Section 503(b) of the Bankruptcy Code (including professional fee claims) against the Debtors arising from and after the Petition Date through and including the date hereof, and has realistically estimated the amount of claims entitled to administrative priority under Section 503(b) of the Bankruptcy Code (including professional fee claims through the date of dismissal (the *"Chapter 11 Administrative Claims"*).

WHEREAS, based on such estimate, the Debtors believe that they have paid or otherwise settled and satisfied or will have satisfied or reserved sufficient amounts to satisfy such Chapter 11 Administrative Claims prior to dismissal of these cases (the *"Dismissal Date"*), and that there would be either no unsatisfied claims entitled to administrative priority pursuant to Section 503(b) of the Bankruptcy Code outstanding on the Dismissal Date or adequate reserves have been created for such claims.

WHEREAS, the Debtors, the Committee, and the Prepetition Second Lien Parties have agreed to a comprehensive settlement and compromise agreement governing, among other things, the deposit of all Estate Assets to a Liquidation Trust, the release of claims and the making of creditor distributions, on the terms and conditions set forth herein (the *"9019 Settlement"*) and in that Joint Motion of the Debtors and the Official Committee of Unsecured

Creditors Pursuant to Section 105(a), 363, 365 and 1112(b) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure For Entry of an Order (A) Approving A Stipulation Among the Debtors, the Committee and the Prepetition Second Lien Parties, (B) Dismissing the Debtors' Chapter 11 Cases, and (C) Granting Certain Related Relief (the "*Settlement and Dismissal Motion*") filed contemporaneously herewith.

WHEREAS, the Debtors, the Committee, and the Prepetition Second Lien Parties believe that if their disputes are not resolved now, future proceedings would be protracted and expensive, involve complex issues of liability and/or damages and involved substantial uncertainties and risks inherent in litigation. The parties have thus considered the benefit to the Debtors' estates and creditors that will be received as a result of the settlement contained herein, and have concluded that the settlement contained herein is fair and equitable and in the best interests of the Debtors, their estates, their creditors and all other parties-in-interests.

NOW, THEREFORE, in consideration of the mutual promises and other consideration described herein, the receipt and sufficiency of which is hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

I. CONSIDERATION TO THE DEBTORS' ESTATES AND ITS CREDITORS

On the Effective Date (defined below), the Debtors' Estates and/or the Committee or its successor or assign, as the case may be, shall receive from (or be deemed received from) the Prepetition Second Lien Parties, the following consideration:

1. **Winddown Reserve**. The Prepetition Second Lien Agent, on behalf of the Second Lien Lenders, agrees to gift, reallocate and permit the Debtors to retain $728,000.00 of the Disputed Cash Proceeds (that would otherwise be the sole property of the Prepetition Second Lien Agent and Prepetition Second Lien Lenders) to be held in escrow by the Debtors (the "*Winddown Reserve*") and dedicated for the purpose of making distributions to the holders of allowed Chapter 11 Administrative Claims, including in respect of those fees of

professionals, which are accrued and unpaid as of the Dismissal Date in the amounts as set forth in the budget, each attached hereto as Exhibit "A" (the "*Budget*"), provided, that any amounts not utilized by the Debtors, their estates, or any trustee for this express purpose shall be used first to fund the Distribution Reserve and, after the Distribution Reserve has been fully funded, remitted to the Liquidator appointed pursuant to the Liquidation Trust reference in Section II below (the "*Liquidator*").

2.  **Distribution Reserve**.  The Prepetition Second Lien Agent, on behalf of the Prepetition Second Lien Lenders, agrees to gift, reallocate and pay to the Committee or its successor or assign from Estate Assets (a) $150,000 and (b) five (5%) percent of any Net Cash Proceeds (defined below) recovered on account of any D&O Claims; and (c) unused amounts of the Committee Carveout, to be held by the Liquidator for the purpose of making distributions to the holders of prepetition general unsecured claims.  The Winddown Reserve shall be fully funded from Disputed Cash Proceeds prior to the funding of the Distribution Reserve from such proceeds.

3.  **Deficiency Claim**.  The Prepetition Second Lien Agent, on behalf of and at the direction of the Prepetition Second Lien Lenders, shall waive, release and forever discharge any deficiency claim, any adequate protection claim, and any post-petition superpriority administrative expense claim against the Debtors' estates solely with respect to, and solely to the extent of, the Winddown Reserve and Distribution Reserve, except that the Prepetition Second Lien Parties shall have the right to receive any excess portion of the Winddown Reserve not required for the purpose of funding the Distribution Reserve pursuant to paragraph I.1 above.

4.  **Avoidance Actions**.  The Prepetition Second Lien Agent, on behalf of and at the direction of the Prepetition Second Lien Lenders, covenants and agrees not to pursue prior to the Dismissal Date any Avoidance Actions (or to transfer or assign the Avoidance Actions to any other party) other than Avoidance Actions against former officers and directors of the Debtors who are makers of outstanding notes payable to the Debtors.

II.  LIQUIDATION TRUST.

On the Effective Date, a Liquidation Trust in the form attached hereto as Exhibit "B"

shall be established and a Liquidator appointed pursuant to the terms thereof.  On the Effective

Date, the following shall occur:

1.  **Turnover of Cash and Cash Equivalents**.  The Debtors be deemed to have paid and turned over all cash of the Debtors' estates that is in the possession or from time to time comes into the possession of the Debtors' estates (whether from proceeds of sale of assets, recovery of deposits, tax refunds, cash collateral or other forms of prepaid or depository items, collection of accounts or accounts

receivable, or other recoveries, causes of action or other assets of any kind, nature or description) to the Liquidation Trust, other than the Winddown Reserve to be retained by the Debtors, as a gift, pursuant to Section I.

2.  **Turnover of Estate Assets**.  All other Estate Assets shall be deposited in the Liquidation Trust, including without limitation, (i) all rights to deposits, tax refunds, cash collateral or other forms of prepaid or depository items; (ii) all rights to the collection accounts or accounts receivable, and general intangibles; (iii) all cash, collateral funds, return premiums, return deductible reimbursement funds, return loss deposit funds, return claim fees and any other proceeds from any and all insurance policies and insurance programs where Butler International Inc. or any of its subsidiaries was a named insured (and all recoveries from insurance companies in connection with such policies and programs shall be specifically payable to the Liquidator); (iv) all books and records of the Debtors, including without limitation, the right to access the Debtors' books and records pursuant to terms of the Butler America Asset Purchase Agreement, (v) the D&O Claims (defined below) and (v) all other Estate Assets other than the Winddown Reserve to be retained by the Debtors' estates, as a gift, pursuant to Section I, exclusively for the payment of Chapter 11 administrative claims pursuant to the Budget.

3.  **Books and Records**.  The Liquidator shall be under no obligation to preserve or maintain the Debtors' book and records and may dispose or otherwise destroy any or all of the Debtors' books and records when and in such manner as the Liquidator determines in its sole discretion.

4.  **No Assumption of Liabilities and Liability for Funding**.  Nothing contained herein is intended, nor shall it be construed or deemed, to provide for any assumption of any liabilities of the Debtors or their estates by any Prepetition Second Lien Party.  Except for Winddown Reserve and Distribution Reserve for which the Prepetition Second Lien Parties have agreed to allocate recoveries in accordance with Section I above, under no circumstances shall any Prepetition Second Lien Party be liable for any funding, or making of any payments related to, obligations of the Debtors' estates, including without limitation, payment of any claims of any creditors of the Debtors, none of which shall be chargeable to, or be the responsibility of, any Prepetition Second Lien Party.  Under no circumstances shall any amounts paid to the Prepetition Second Lien Parties to date or in the future be subject to disgorgement or return to the Debtors, their estates, or their creditors.

5.  **Investigation Termination Date**.  The Debtors and Committee acknowledge and agree that the Investigation Termination Date (as defined in the Cash Collateral Order) will be deemed to have expired upon entry of an order approving this Stipulation.  At such time, the Debtors and Committee stipulate and agree that the Prepetition Second Lien Agent holds a valid and perfected security interests and Replacement Liens (as defined in the Cash Collateral Order) in and to the all of the Prepetition Collateral (as defined in the Final DIP Order) and Collateral (as

defined the Cash Collateral Order)(collectively, for the purposes of this Stipulation, referred to as the "*Collateral*"). For the purposes of clarity, the Collateral includes all Estate Assets, including but not limited to, all accounts, accounts receivable, contract rights, general intangibles, deposits, refunds (including, without limitation, recovery of insurance deposits, cash collateral accounts or refunds and tax refunds), claims and causes of action (including Avoidance Actions and the D&O Claims, defined below), other Disputed Assets, and all other property of the estate, whether arising or existing prior to or after the Petition Date. Pursuant to the terms of the Cash Collateral Order (paragraph 9), the Prepetition Second Lien Parties may, but shall not be required to, file financing statements, mortgages, deeds of trust, security deeds, notices of lien, or similar instruments in any jurisdiction, or take any action, to attach or perfect the security interests and liens, and (pursuant to paragraph 15 of the Cash Collateral Order) such security interests and Replacement Liens shall continue in full force and effect following dismissal of the Debtors' Chapter 11 cases.

6.    **Further Assurances**. The Debtors hereby irrevocably appoint the Liquidator as their attorney in fact to act in the Debtors' place and stead in connection with collecting and otherwise realizing upon the Estate Assets, and receiving the proceeds thereof. The Debtors (and their successors and assigns), at the expense of the Liquidator, shall otherwise take all action reasonably requested by the Liquidator to implement the purposes and intent of this Stipulation, including, without limitation, the execution of any documents necessary to ratify and confirm the authority of the Liquidator to realize upon the assets as contemplated hereby, and the preparation and submission of any tax filings or documents reasonably necessary for the Liquidator to recover any tax refunds.

III.    DIRECTOR AND OFFICER CLAIMS

The Debtors and the Committee acknowledge and agree that claims may exist against certain of the former officers and directors of the Debtors (the "*D&O Claims*") and that these D&O Claims are "Collateral", as defined herein, subject to the valid, perfected and unavoidable first priority liens and security interests of the Prepetition Second Lien Agent for the benefit of the Prepetition Second Lien Lenders. As of the Effective Date:

1.    **Distribution of Proceeds**. Subject to the provisions of paragraph 12(b) above, the Prepetition Second Lien Agent on behalf of the Prepetition Second Lien Lenders shall be entitled to 100% of the Net Cash Proceeds and recoveries from the prosecution, settlement or other disposition of the D&O Claims without further order of the Court; *provided, however*, the Prepetition Second Lien Agent, on behalf of the Prepetition Second Lien Lenders, agrees to gift, reallocate and pay (and shall authorize the Liquidator to gift, reallocate and pay) to the general

unsecured creditors, five (5%) percent of any Net Cash Proceeds recovered from any payment made under any applicable director and officer insurance policy that provides coverage on account of any derivative claims to the Committee, its successor or assigns. As used herein, the term *"Net Cash Proceeds"* shall mean the cash proceeds or cash recoveries on account of D&O Claims net of Litigation Expenses. As used herein, the term *"Litigation Expenses"* shall mean any and all costs and expenses (including, without limitation, attorneys', witness and expert witness fees, costs and expenses, contingent or otherwise) incurred or payable solely for the prosecution and settlement of the D&O Claims.

IV.    INSURANCE

The Liquidator shall have sole authority to realize and recover on the Debtors' insurance policies, including, without limitation, sole authority to resolve any claims under the Debtors' insurance policies, and be paid any cash recoveries in respect thereof, settle all workers' compensation claims, and recover all deposits, unearned premiums or other claims in respect of any of the Debtors' insurance policies.

V.    RELEASE BY DEBTORS AND COMMITTEE AND ALLOWANCE OF CLAIMS

On the Effective Date:

1.    **Release**. Each of the Debtors (and their estates) and the Committee hereby releases the Prepetition Second Lien Agent and Prepetition Second Lien Lenders and each of their respective officers, directors, employees, agents, attorneys and advisors from any and all claims, actions, suits, judgments, demands, attorneys' fees, causes of action, debtors, liabilities or controversies of any kind whatsoever, whether at law or in equity, whether known or unknown, matured or unmatured, liquidated or unliquidated.

2.    **Allowance of Claim (Prepetition Second Lien Parties)**. The claim of the Prepetition Second Lien Agent on behalf of the Prepetition Second Lien Lenders shall be allowed in the amount of $22,961,197.18 as of December 22, 2009, plus interest accruing after December 22, 2009, and costs and expenses, including attorneys' fees (the *"Allowed Prepetition Second Lien Lenders' Claim"*). The Allowed Prepetition Second Lien Lenders' Claim shall be deemed allowed as a secured claim in the amount of $15,000,000.00 within the meaning of section 506 of the Bankruptcy Code and shall be deemed allowed within the meaning of section 502 of the Bankruptcy Code as an unsecured claim in the amount of $7,961,197.18, plus with all interest that accrues after December 22, 2009 (the *"Deficiency Claim"*). In the event of a trustee election pursuant to section 702 of the Bankruptcy Code, each of the Prepetition Second Lien Parties shall be entitled

to vote their pro-rata portion of the Deficiency Claim and each such Prepetition Second Lien Party shall be considered as a creditor for numerosity requirement of section 702(c)(2) of the Bankruptcy Code.

## VI. DISMISSAL OF THESE CHAPTER 11 CASES

The Debtors and the Committee consent to the dismissal of these Chapter 11 cases pursuant to Bankruptcy Code §1112(b) provided that such dismissal is effective fourteen (14) days from the date of entry of the Approval Order.

## VII. EXCULPATION

From and after the Effective Date, none of the Debtors, nor the Committee, nor the Prepetition Second Lien Parties, nor any of the Debtors', Committee's or the Prepetition Second Lien Parties' respective present or former directors, officers, employees, shareholders, partners, members, affiliated funds, attorneys, consultants, advisors and agents (in each case, acting in such capacities), shall have or incur any liability to any person for any act taken or omitted to be taken in good faith in connection with or related to the negotiation, formation, preparation, dissemination, implementation, confirmation or consummation of this Stipulation or the Approval Order (other than an act in contravention of the Stipulation or the Approval Order), or any contract, instrument, release or agreement or document created or entered into, or any other act taken or omitted to be taken in good faith in connection with the Stipulation or the Approval Order.

## VIII. MISCELLANEOUS

1. **Form of Approval Order**.  The effectiveness of this Stipulation is subject to the entry of the Approval Order, in the form attached hereto as <u>Exhibit "C"</u>, or such other form of order as may be agreed to in writing by the Debtors, Committee and the Prepetition Second Lien Parties, which order shall, among other things, approve the Stipulation, approve procedures for the approval of fee applications of professionals, and the dismissal of these Chapter 11 cases.

2. **Effect on Litigation**. Neither this Stipulation or any of the terms hereof, or any negotiations or proceedings in connection herewith, shall continue to be construed as evidence of an admission on the part of any party hereto of any liability, culpability or wrongdoing whatsoever, or of the truth or untruth of any of the claims made by any party in interest or the merit or any lack of merit of any of the defenses thereto; nor shall this Stipulation or any of the terms hereof, or any negotiations or proceedings in connection herewith, be offered or received in evidence or used in any proceeding against any party hereto for any purpose whatsoever, except with respect to (a) effectuation and enforcement of this Stipulation, and (b) proceedings in the Debtors' Chapter 11 Cases in furtherance of approval of this Stipulation and/or the Settlement and Dismissal Motion (including authorization and approval of this Stipulation).

3. **Reliance on Legal Counsel**. Each party hereto represents and warrants that it has not relied upon or been induced by any representation, statement or disclosure by any other party, but has relied upon its own knowledge and judgment or upon the advice and representation of its counsel in entering into this Stipulation. Each party acknowledges that it has been represented in the negotiations for an in the execution of this Stipulation by counsel of its own choice and that it has read this Stipulation and has had it fully explained to it by its counsel and that it is fully aware of the contents of this Stipulation and its legal effect.

4. **No Representation or Promises Not Contained Herein**. In entering into this Stipulation each of the parties hereto represents and warrants that it relied wholly upon its own judgment, belief and knowledge.

5. **Due Authorization**. Each of the parties hereto represents and warrants to the other than (i) this Stipulation has been duly authorized, executed and delivered; (ii) subject to Court approval, as and to the extent required, it has the power to enter into this Stipulation; and (iii) subject to Court approval, as and to the extent required, this Stipulation shall be binding and enforceable.

6. **Entire Stipulation**. Except to the extent provided herein, this Stipulation and the terms of the Approval Order constitute the entire agreement of the parties with respect to the matters covered herein, and no other agreement, statement or promise regarding such matters made by any party, or by any employee, director, member, shareholder, officer, agent or attorney of any party, which is not contained in this Stipulation, shall be binding or valid. In the event of any conflict between the terms of this Stipulation and any prior order entered by this Court, the terms of this Stipulation shall control.

7. **Controlling Law**. This Stipulation shall be governed by, construed in accordance with, and enforced under the laws of Delaware, without regard to the rules of conflict of laws of the State of Delaware or any other jurisdiction.

8. **Effect of Captions**. Captions of the sections of this Stipulation are for convenience and reference only, and the words contained therein shall in no way

be employed to explain, modify, amplify or aid in the interpretation, construction or meaning of the provisions of this Stipulation.

9. **Severability**. If any provision of this Stipulation is held, determined or adjudged to be invalid, unenforceable or void for any reason whatsoever, this entire agreement shall be null and void unless the parties hereto agree otherwise in writing.

10. **Construction**. This Stipulation shall be construed as if prepared jointly by the parties hereto, and any uncertainty or ambiguity shall not be interpreted against any of the parties.

11. **Rights and Liabilities of Successors**. This Stipulation shall be binding upon and shall inure to the benefit of the parties hereto and their respective trustees (including any trustee(s) appointed for the Debtors pursuant to sections 1104, 701, 702, or 703 of the Bankruptcy Code), heirs, executors, administrators, predecessors, successors, assigns, parent and subsidiary corporations, officers, directors, members, shareholders, affiliated funds, agents, attorneys, partners, representatives and employees, as applicable. Except as otherwise expressly provided herein, this Stipulation is not intended to confer upon any other person or entity any rights or remedies hereunder.

12. **Execution in Counterparts; Facsimile Signatures**. This Stipulation may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which counterparts together shall constitute one and the same instrument. This Stipulation shall become enforceable when each party hereto shall have received counterparts thereof signed by the other parties hereto. Facsimile or other electronically transmitted signature pages shall be deemed to be originals for all purposes.

13. **Not a Solicitation of Securities or Plan Acceptances**. This Stipulation does not constitute an offer of securities or a solicitation of acceptances or rejection of any proposed or contemplated chapter 11 plan of reorganization of liquidation.

14. **Amendment**. This Stipulation may be modified, amended or otherwise changed in a writing signed by all of the parties hereto, provided, that the signature of the Committee shall not be required after the funding of the Distribution Reserve.

15. **Effective Date**. This Stipulation shall become effective and binding upon the parties upon the date the Court enters an order approving the Settlement and approving this Stipulation (the "*Effective Date*"). Promptly following the Effective Date, the following shall occur: reallocation and funding of the Winddown Reserve and Distribution Reserve, and payment of any then accrued and unpaid (i) Chapter 11 administrative claims (other than those subject to allowance by the Court) which are not disputed and (ii) then accrued and unpaid fees of the Office of the United States Trustee, as provided in the Approval Order.

16. **Consent to Jurisdiction**. All actions brought arising out of or in any way related to this Stipulation shall be brought in the Court, and the Court shall retain exclusive jurisdiction to determine any and all such actions.

17. **Hearing on Final Fee Applications**. The parties agree to jointly request that the Court establish a prompt deadline for the filing of final applications of the professionals retained by the Debtors and the Committee for the allowance of fees and expenses (the "*Final Fee Applications*") and to use their best efforts to obtain the scheduling of a hearing on Final Fee Applications upon as soon as the earliest possible date.

MC FUNDING, LTD
By: Monroe Capital Management, LLC, Lender


By: _____
Name: _____
Title: _____

MONROE CAPITAL MANAGEMENT ADVISORS
LLC, as Agent


By: _____
Name: _____
Title: _____

GARRISON FUNDING 2008-1 LTD.


By: _____
Name: _____
Title: _____

BUTLER SERVICES INTERNATIONAL, INC., et., al,


By: _____
Name:   Ronald Uyematsu
Title:    Chief Executive Officer and President

Exhibit "A"

Budget

Butler International
Cash Rollforward / Budget ($000's)
As of February 19, 2010

| | ACCRUED AND UNPAID | | | BUDGET | | |
| | November and prior | December | January | February | Windown | TOTAL |
|---|---|---|---|---|---|---|
| Beginning cash balance | | | | | | 725 |
| Plus: Misc cash receipts/refunds, etc. | | | | | 3 | 3 |
| Less: Payroll | | | | 2 | 5 | 7 |
| Administrative claims (a) | | | | 62 | | 62 |
| Other | | | 3 | 6 | 16 | 25 |
| Moses & Singer | 34 | 32 | 8 | 7 | | 81 |
| Potter Anderson | 36 | 28 | 27 | 15 | | 106 |
| Bayard | 30 | 10 | 10 | 5 | | 55 |
| Proskauer | 19 | 26 | 25 | 25 | 25 | 120 |
| JH Cohn | 3 | 14 | 10 | | | 27 |
| Donlin Recano | 10 | 12 | 10 | | | 32 |
| RAS Management Advisors | | | | | 5 | 5 |
| R. Uyematsu | | - | | 4 | | 4 |
| US Trustee / Noticing Fees | 14 | 13 | | | 29 | 56 |
| Total expenses | 146 | 134 | 93 | 126 | 80 | 578 |
| Less: Distibution Reserve | | | | | | 150 |
| Excess Cash (for transfer to Secured Lender) | | | | | | 0 |
| Plus: Rabbi Trust | | | | | | 148 |
| Total Funds to Secured Lender | | | | | | 148 |

(a) Administrative Claims

| | |
|---|---|
| Former COBRA participant refunds | 24 |
| PBGC | 16 |
| Hilder Technologies | 12 |
| Chief Executive (b) | 10 |
| State of Tennessee | 0 (less than $1,000) |
| Bowden Health | 0 (less than $1,000) |
| State of New York | 0 (less than $1,000) |
| TOTAL | 62 |

(b) Subject to the parties memorializing their agreement in principle.

Exhibit "B"

Form of Liquidation Trust

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| **BUTLER SERVICES INTERNATIONAL,** | ) Case No. 09-11914(KJC) |
| **INC.**, *et al.,* | ) |
| | ) |
| Debtors. | ) |
| | ) |

---

## CREDITORS' LIQUIDATION TRUST AGREEMENT

---

**POTTER ANDERSON & CORROON LLP**          *Add Trustee*
Jeremy W. Ryan (No. 4057)
Hercules Plaza, Seventh Floor
1313 N. Market Street
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192

*Counsel for the Committee*

*Add debtors*                              **PROSKAUER ROSE LLP**
                                           Peter J. Antoszyk (No. __)
                                           One International Place
                                           Boston, MA 02110
                                           Telephone: (617) 526-9749
                                           Facsimile: (617) 526-9899

                                           *Counsel for Senior Lenders*

Dated: March __, 2010

This Creditors' Liquidation Trust Agreement (the "Trust Agreement") is made by and among the Official Committee of Unsecured Creditors (the "Committee") , Monroe Capital, as Agent for the Senior Lenders (the "Agent") and Monroe Capital and Garrison Investments (collectively, "Senior Lenders") and NHV Advisors, Inc., as trustee (the "Liquidator") and executed in connection with the Stipulation by and among the Butler Services International, Inc., *et al.* (collectively, the "Debtors"), the Official Committee of Unsecured Creditors, the Agent and the Senior Lenders (the "Stipulation") dated March __, 2010[1] and filed in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

## RECITALS

WHEREAS, on June 1, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware;

WHEREAS, on June 10, 2009, the Committee was appointed in these cases by the Office of the United States Trustee for the District of Delaware;

WHEREAS, the Debtors, the Committee, and Senior Lenders agreed to a comprehensive settlement and compromise agreement governing, among other things, the release of claims and the procedure for the dismissal of the Debtors' chapter 11 cases and the making of creditor distributions, on the terms and conditions set forth in the Stipulation and in that Joint Motion of the Debtors and the Official Committee of Unsecured Creditors pursuant to sections 105(a), 363, 365 and 1112(b) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Practice and Procedure for entry of an order (A) Approving a Stipulation Among the Debtors the Committee and the Prepetition Second Lien Parties, (B) Dismissing the Debtors' Chapter 11 Cases, and (C) Granting Certain Related Relief (the "Settlement and Dismissal Motion") filed on _____;

WHEREAS, the Stipulation contemplates that all assets of the Debtors, other than the Winddown Reserve, shall be deposited with the Liquidator under this Trust Agreement (collectively, the "Trust Assets"). The Stipulation by its terms is to be effective and binding upon all parties on the date the Court enters and order approving the Stipulation (the "Effective Date"). The parties to this agreement hereby appoint the Liquidator for purposes of this agreement and receipt of the Trust Assets;

WHEREAS, this Trust Agreement provides for (a) the creation on the Effective Date of a trust (the "Liquidation Trust") and the creation of the beneficial interests in the Liquidation Trust solely for the benefit of the Senior Lenders and holders of valid and undisputed general unsecured claims (including those unsecured creditors holding priority claims pursuant to Section 502(a)(4)-(10) of the Bankruptcy Code) of the Debtors (collectively, the "Beneficiaries" and, each individually, a "Beneficiary"), and (b) vesting of the Trust Assets in the Liquidation Trust in accordance with the terms of the Stipulation and as set forth in this Trust Agreement;

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings ascribed thereto in the Stipulation.

WHEREAS, the Debtors, Committee and Senior Lenders contemplate that, pursuant to Treasury Regulation Section 301.7701-4(d), the Liquidation Trust shall be created for the purpose of: (a) administering the Trust Assets; (b) resolving all disputed, contingent and/or unliquidated claims of Beneficiaries; and (d) making all distributions to the Beneficiaries, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to and consistent with the liquidating purpose of the Liquidation Trust; and

WHEREAS, the Liquidation Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes, pursuant to Sections 671-677 of the Internal Revenue Code of 1986, as amended (the "IRC"), with the Beneficiaries to be treated as the grantors of the Liquidation Trust and deemed to be the owners of the Trust Assets (subject to the rights of the Liquidator), and consequently, the transfer of the Trust Assets to the Liquidation Trust shall be treated as a deemed transfer of those assets from Senior Lenders to the Beneficiaries followed by a deemed transfer by such Beneficiaries to the Liquidation Trust for federal income tax purposes.

NOW, THEREFORE, pursuant to the Stipulation, in consideration of the premises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

## ARTICLE I
## DECLARATION OF TRUST

**1.1     Creation and Purpose of the Liquidating Trust.**  The Committee, the Senior Lenders and the Liquidator hereby create the Liquidation Trust for the primary purpose of liquidating and distributing the Trust Assets to the Beneficiaries in accordance herewith and in accordance with applicable tax statutes, rules, and regulations, and in an expeditious but orderly manner, with no objective to continue or engage in the conduct of a trade or business.  In particular, the Liquidator shall (a) make continuing efforts to collect and reduce the Trust Assets to cash, and (b) make timely distributions and not unduly prolong the duration of the Liquidation Trust.

**1.2     Declaration of Trust.**  To declare the terms and conditions hereof, and in consideration of the agreements set forth in the Stipulation, the Committee, the Senior Lenders and the Liquidator have executed this Trust Agreement and, effective on the Effective Date, [the Committee and Senior Lenders] hereby irrevocably transfer to the Liquidation Trust, the Trust Assets, to have and to hold unto the Liquidation Trust and its successors and assigns forever, under and subject to the terms of the Stipulation for the benefit of the Beneficiaries and their successors and assigns as provided for in this Trust Agreement.

**1.3     Vesting of Assets.**  On the Effective Date, pursuant to the terms of the Stipulation, the Trust Assets shall be vested in the Liquidation Trust.  All such Trust Assets shall be delivered to the Liquidation Trust free and clear of interests, claims, liens, or other encumbrances of any kind.  The Liquidator shall have no duty to arrange for any of the transfers contemplated hereunder and shall be conclusively entitled to rely on the legality and validity of

such transfers. To the extent any of the foregoing does not automatically occur on the Effective Date, the Debtors shall, as soon as reasonably practicable, execute such other and further documents as are reasonably necessary to effectuate all of the foregoing.

**1.4  Funding of the Liquidation Trust.**  The Liquidation Trust shall be funded on the Effective Date with all right, interest and title to the Trust Assets, as provided for in the Stipulation.

**1.5  Acceptance by Liquidator.**  The Liquidator hereby accepts the trust imposed upon it by this Trust Agreement and agrees to observe and perform that trust on and subject to the terms and conditions set forth in this Trust Agreement. In connection with and in furtherance of the purposes of the Liquidation Trust, the Liquidator hereby accepts the transfer of the Trust Assets.

**1.6  Name of the Liquidating Trust.**  The Liquidation Trust established hereby shall be known as the "Butler Liquidation Trust".

**1.7  Liquidating Trust Committee.**  A Liquidation Trust Committee shall be created on the Effective Date. The Liquidation Trust Committee shall be comprised of the Senior Lenders, or their successors and assigns. The Liquidation Trust Committee shall have the duties and powers as provided for in this Trust Agreement, including the duty to maximize the value of the Trust Assets in the most expeditious manner possible for the benefit of the Beneficiaries.

## ARTICLE II
## THE LIQUIDATOR

**2.1  Appointment.**  The Liquidator has been selected by the Committee and Senior Lenders and has been appointed as of the Effective Date. The Liquidator's appointment shall continue until the earlier of (a) the termination of the Liquidation Trust or (b) the Liquidator's resignation, death, dissolution, removal, or liquidation.

**2.2  General Powers.**  Except as otherwise provided in this Trust Agreement, the Liquidator may control and exercise authority over the Trust Assets, over the acquisition, management, and disposition thereof, and over the management and conduct of the business of the Liquidation Trust. Regarding all matters identified in Section 3.3 hereof (except as otherwise provided herein), the Liquidator shall follow the direction of the Liquidation Trust Committee, provided however, that nothing in this Agreement shall be deemed to prevent the Liquidator from taking, or failing to take, any action that, based upon the advice of counsel, it determines it is obligated to take (or fail to take) in the performance of any fiduciary or similar duty which the Liquidator owes to the Beneficiaries or any other person or entity. No person dealing with the Liquidation Trust shall be obligated to inquire into the Liquidator's authority in connection with the acquisition, management, or disposition of Trust Assets; provided, however, that the members of the Liquidation Trust Committee are entitled to make such inquires in connection with the exercise of their rights or powers pursuant Section 3.3 of this Trust Agreement. Without limiting the foregoing, the Liquidator shall be expressly authorized to, with respect to the Liquidation Trust and the Trust Assets:

(a)     Open and maintain bank accounts on behalf of or in the name of the Liquidation Trust, calculate and make distributions, and take other actions including the establishment, re-evaluation, adjustment, and maintenance of appropriate reserves, in the name of the Liquidating Trust.

(b)     Receive, manage, invest, supervise, and protect the Trust Assets, subject to the limitations provided herein.

(c)     Hold legal title to any and all Trust Assets.

(d)     Collect and liquidate all Trust Assets.

(e)     File, if necessary, any and all tax and information returns required with respect to the Liquidation Trust, make tax elections for and on behalf of the Liquidation Trust, and pay taxes, if any, payable for and on behalf of the Liquidation Trust.

(f)     Pay all lawful expenses, debts, charges, taxes, and liabilities of the Liquidation Trust.

(g)     Make distributions to the Beneficiaries, and to creditors of the Liquidation Trust.

(h)     Withhold from the amount distributable to any person or entity such amount as may be sufficient to pay any tax or other charge which the Liquidator has determined, based upon the advice of its agents and/or professionals, may be required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof.

(i)     Enter into any agreement or execute any document or instrument required by or consistent with this Trust Agreement and perform all obligations thereunder.

(j)     If any of the Trust Assets are situated in any state or other jurisdiction in which the Liquidator is not qualified to act as trustee, subject to the approval of the Liquidation Trust Committee, nominate and appoint a person duly qualified to act as trustee in such state or jurisdiction and require from each such trustee such security as may be designated by the Liquidator in its discretion; confer upon such trustee all the rights, powers, privileges, and duties of the Liquidator hereunder, subject to the conditions and limitations of this Trust Agreement, except as modified or limited by the Liquidator and except where the conditions and limitations may be modified by the laws of such state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such trustee is acting shall prevail to the extent necessary); require such trustee to be answerable to the Liquidator for all monies, assets, and other property that may be received in connection with the administration of all property; and, subject to the approval of the Liquidation Trust Committee, remove such trustee, with or without cause, and appoint a successor trustee at any time by the execution by the Liquidator of a written instrument declaring such trustee removed from office, and specifying the effective date and time of removal.

(k)     Subject to Section 4.5 of this Trust Agreement, purchase and carry all insurance policies and pay all insurance premiums and costs it deems reasonably necessary or advisable.

(l)     Implement, enforce, or discharge all of the terms, conditions, and all other provisions of, and all duties and obligations under this Trust Agreement.

(m)     Employ and compensate professionals and other agents as necessary to carry out the terms of this Trust Agreement (provided, that the Liquidator shall obtain the approval of the Liquidation Trust Committee prior to the employment of any attorney to prosecute the D&O Claims).

(n)     Invest in demand and time deposits in banks or savings institutions, or temporary investments such as short term certificates of deposit or Treasury bills or other investments that a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold, pursuant to the Treasury Regulations or any modification in the Internal Revenue Services ("IRS") guidelines, whether set forth in IRS rulings, revenue procedures, other IRS pronouncements or otherwise.

(o)     Realize and recover on and authority to resolve any claims under the Debtors' insurance policies, and be paid any cash recoveries in respect thereof, settle all workers' compensation claims, and recover all deposits, unearned premiums or other claims in respect of any of the Debtors' insurance policies.

**2.3     Limitations on the Liquidator.** Notwithstanding anything under applicable law, the Liquidator shall not do or undertake any of the following, except as specifically provided herein:

(a)     Disregard the instructions of the Liquidation Trust Committee regarding any of the matters identified in Section 3.3 hereof, provided, however, that nothing in this Trust Agreement shall be deemed to prevent the Liquidator from taking, or failing to take, any action that, based upon the advice of counsel, it is obligated to take (or fail to take) in the performance of any fiduciary or similar duty which the Liquidator owes to the Beneficiaries or any other person.

(b)     Take, or fail to take, any action that would jeopardize treatment of the Liquidation Trust as a "liquidating trust" for federal income tax purposes.

(c)     Exercise any investment power other than the power to invest in demand and time deposits in banks or savings institutions, or temporary investments such as short term certificates of deposit or Treasury bills or other investments that a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold, pursuant to the Treasury Regulations or any modification in the IRS guidelines, whether set forth in IRS rulings, revenue procedures, other IRS pronouncements or otherwise.

(d)     Notwithstanding any of the foregoing, the Liquidator shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere with the Liquidator's administration of the Liquidation Trust.

**2.4    Compensation of Liquidator and its Agents and Professionals.**  The Liquidator shall receive fair and reasonable compensation for his services, which shall be a charge against and paid out of the Trust Assets.  All costs, expenses, and obligations incurred by the Liquidator (or professionals who may be employed by the Liquidator in administering the Liquidation Trust, in carrying out their responsibilities under this Trust Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the Liquidator from the Trust Assets prior to any distribution to the Beneficiaries.

**2.5    General Duties, Obligations, Rights, and Benefits of the Liquidator.**  The Liquidator shall have all duties, obligations, rights, and benefits assumed by, assigned to or vested in the Liquidation Trust under this Trust Agreement.  Such duties, obligations, rights, and benefits include, without limitation, all duties, obligations, rights and benefits relating to the collection and liquidation of the Trust Assets, distributions to Beneficiaries, administration of the Liquidation Trust, and any other duties, obligations, rights, and benefits reasonably necessary to accomplish the purpose of the Liquidation Trust.

**2.6    Replacement of the Liquidator.**  The Liquidator may resign at any time upon thirty (30) days' written notice delivered to the Liquidation Trust Committee, provided that such resignation shall only become effective upon the appointment of a permanent or interim successor Liquidator.  The Liquidation Trust Committee may remove the Liquidator with or without cause.  In the event of the resignation or removal of the Liquidator, the Liquidation Trust Committee may designate a person to serve as permanent or interim successor Liquidator.  Upon its appointment, the successor Liquidator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor, except as provided in Section 2.4(a) above, and all responsibilities of the predecessor Liquidator relating to the Liquidation Trust shall be terminated.  In the event the Liquidator's appointment terminates by reason of death, dissolution, liquidation, resignation, or removal, such Liquidator shall be immediately compensated for all reasonable fees and expenses accrued through the effective date of termination, whether or not previously invoiced. The provisions of Article IV of this Trust Agreement shall survive the resignation or removal of any Liquidator.

**2.7    Liquidation Trust Continuance.**  The death, dissolution, liquidation, resignation, or removal of the Liquidator shall not terminate the Liquidation Trust or revoke any existing agency created by the Liquidator pursuant to this Trust Agreement or invalidate any action theretofore taken by the Liquidator, and the provisions of this Trust Agreement shall be binding upon and inure to the benefit of the successor Liquidator and all its successors or assigns.

## ARTICLE III
## LIQUIDATION TRUST COMMITTEE

**3.1    Liquidation Trust Committee.**  As of the Effective Date, the Liquidation Trust Committee shall be comprised of one representative of each of the Senior Lenders ("Members"). Should any Member resign from the Liquidation Trust Committee, the remaining Member may continue to serve and have the powers of the Liquidation Trust Committee as provided herein. All actions of the Liquidation Trust Committee shall require unanimous consent of the Members.

**3.2    Reports to Liquidation Trust Committee.** Notwithstanding any other provision of this Trust Agreement, the Liquidator shall report to the Liquidation Trust Committee on a regular basis, not less than once per year, or as more frequently as any Member may require from time to time.   The Liquidation Trust Committee shall keep all such information strictly confidential.

**3.3    Actions Requiring Approval of the Liquidation Trust Committee.**  Except as otherwise provided herein, the Liquidator shall obtain the approval of the Liquidation Trust Committee (which may be obtained by negative notice) prior to taking any action regarding any of the following matters:

(a)    The prosecution of claims disputes, or the commencement, settlement, compromise, withdrawal, or other resolution of any disputed claims, wherein the amount of the asserted claim exceeds $50,000;

(b)    Any matter which could reasonably be expected to have a material adverse effect on the amount of distributions to be made by the Liquidation Trust;

(c)    The exercise of any right or action set forth in this Trust Agreement that expressly requires approval of the Liquidation Trust Committee; or

(d)    All investments authorized to be made by the Liquidator under this Trust Agreement.

**3.4    Actions Requiring Notice to and Consultation with the Liquidation Trust Committee.**  Notwithstanding the provisions of Section 3.3, the Liquidator shall be authorized to conduct the prosecution of the D&O Claims in his sole discretion (subject to the advise of the Liquidation Trust Committee), provided, that the Liquidator shall obtain the approval of the Liquidation Trust Committee prior to taking any action to dismiss or settle such litigation.  The Liquidator shall regularly consult, and shall authorize his counsel to regularly consult, with the Liquidation Trust Committee in matters and affairs concerning the D&O Claims, it being understood and agreed that the Liquidator and the Liquidation Trust Committee share a common interest and therefore and such communications shall be privileged pursuant to the "common interest privilege".

# ARTICLE IV
## LIABILITY OF LIQUIDATOR
## AND THE LIQUIDATION TRUST COMMITTEE

**4.1** **Standard of Care; Exculpation**. Neither the Liquidator, the Members of the Liquidation Trust Committee, nor any director, officer, affiliate, employee, employer, professional, successors, assigns, agent, or representative of the Liquidator or any Member of the Liquidation Trust Committee (each, an "Exculpated Party" and collectively, the "Exculpated Parties") shall be liable for any losses, claims, damages, liabilities, obligations, settlements, proceedings, suits, judgments, causes of action, litigation, actions, or investigations (whether civil or administrative and whether sounding in tort, contract, or otherwise), penalties, costs, and expenses, including reasonable fees and disbursements (collectively referred to herein as "Losses"), whether or not in connection with litigation in which any Exculpated Party is a party, or enforcing this Trust Agreement (including these exculpation provisions), as and when imposed on the Liquidator, incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Liquidator's or Liquidation Trust Committee's execution, delivery, and acceptance of or the performance or nonperformance of its powers, duties and obligations under this Trust Agreement or as may arise by reason of any action, omission, or error of an Exculpated Party; provided, however, that the foregoing limitation shall not apply to any Losses suffered or incurred by any holder of a claim or interest or Beneficiary that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the fraud, gross negligence or willful misconduct of such Exculpated Party. Every act taken or omitted, power exercised, or obligation assumed by the Liquidation Trust or any Exculpated Party pursuant to the provisions of this Trust Agreement shall be held to be taken or omitted, exercised, or assumed, as the case may be, by the Liquidation Trust or any Exculpated Party acting for and on behalf of the Liquidation Trust and not otherwise; provided, however, that none of the foregoing entities or persons are deemed to be responsible for any other such entities' or persons' actions or inactions. Except as provided in the first proviso of the first sentence of this Section 4.1, every person, firm, corporation, or other entity contracting or otherwise dealing with or having any relationship with the Liquidation Trust or any Exculpated Party shall have recourse only to the Trust Assets for payment of any liabilities or other obligations arising in connection with such contracts, dealings or relationships and the Liquidation Trust and the Exculpated Parties shall not be individually liable therefore. In no event shall the Liquidator be liable for indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Liquidator has been informed of the likelihood of such loss or damages and regardless of the form of action. Any liability of the Liquidator under this Trust Agreement will be limited to twice the amount of annual fees paid to the Liquidator.

**4.2** **Indemnification**.

(a) The Liquidator, the Members of the Liquidation Trust Committee, and any director, officer, affiliate, employee, employer, professional, successor, assign, agent, or representative of the Liquidator or the Members of the Liquidation Trust Committee (each, an "Indemnified Party" and collectively, the "Indemnified Parties") shall be defended, held harmless, and indemnified from time to time by the Liquidation Trust against any and all Losses, including,

without limitation, the costs for counsel or others in investigating, preparing, defending, or settling any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing this Trust Agreement (including these indemnity provisions), as and when imposed on the Liquidator, incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Liquidator's or Liquidation Trust Committee's execution, delivery, and acceptance of or the performance or nonperformance of its powers, duties, and obligations under this Trust Agreement or as may arise by reason of any action, omission, or error of an Indemnified Party; provided, however, such indemnity shall not apply to any such Losses to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the fraud, gross negligence, or willful misconduct of such Indemnified Party. Satisfaction of any obligation of the Liquidation Trust arising pursuant to the terms of this Section shall be payable only from the Trust Assets, shall be advanced prior to the conclusion of such matter and such right to payment shall be prior and superior to any other rights to receive a distribution of the Trust Assets.

(b)     The Liquidation Trust shall promptly pay to the Indemnified Party the expenses set forth in subparagraph (a) above upon submission of invoices therefore on a current basis. Each Indemnified Party hereby undertakes, and the Liquidation Trust hereby accepts its undertaking, to repay any and all such amounts so paid by the Liquidation Trust if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefore under this Trust Agreement.

**4.3     No Liability for Acts of Successor/Predecessor Liquidators.** Upon the appointment of a successor Liquidator and the delivery of the Trust Assets to the successor Liquidator, the predecessor Liquidator and any director, officer, affiliate, employee, employer, professional, agent, or representative of the predecessor Liquidator shall have no further liability or responsibility with respect thereto. A successor Liquidator shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor and no successor Liquidator shall be in any way liable for the acts or omissions of any predecessor Liquidator unless a successor Liquidator expressly assumes such responsibility. A predecessor Liquidator shall have no liability for the acts or omissions of any immediate or subsequent successor Liquidator for any events or occurrences subsequent to the cessation of its role as Liquidator.

**4.4     Reliance by Liquidator and the Liquidation Trust Committee on Documents or Advice of Counsel.** Except as otherwise provided in this Trust Agreement, the Liquidator, the Liquidation Trust Committee, any director, officer, affiliate, employee, employer, professional, agent, or representative of the Liquidator, and the Members of the Liquidation Trust Committee may rely, and shall be protected from liability for acting or failing to act, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the Liquidator and/or the Liquidation Trust Committee to be genuine and to have been presented by an authorized party. Neither the Liquidator nor the Liquidation Trust Committee shall be liable for any action taken or omitted or suffered by the Liquidator or the Liquidation Trust Committee, as applicable, in reasonable reliance upon the advice of counsel or other professionals engaged by the Liquidator or the Liquidation Trust Committee, as applicable, in accordance with this Trust Agreement. The Liquidator and the Liquidation Trust Committee, as applicable, shall be fully indemnified by the

Liquidation Trust for or in respect of any action taken, suffered or omitted by it and in accordance with such advice or opinion.

**4.5    Insurance.**    The Liquidator, upon the approval of the Liquidation Trust Committee, may purchase, using the Trust Assets, and carry all insurance policies and pay all insurance premiums and costs the Liquidation Trust Committee and the Liquidator deem reasonably necessary or advisable, including, without limitation, purchasing any errors and omissions insurance with regard to any Losses it may incur, arising out of or due to its actions or omissions, or consequences of such actions or omissions, other than as a result of its fraud or willful misconduct, with respect to the implementation and administration of this Trust Agreement.

**4.6    Survival.**  The provisions of this Article IV shall survive the termination of this Trust Agreement and the death, resignation, removal, liquidation, dissolution, or replacement of the Liquidator or the dissolution of the Liquidation Trust Committee.

**ARTICLE V**
**GENERAL PROVISIONS CONCERNING**
**ADMINISTRATION OF THE LIQUIDATING TRUST**

**5.1    Register of Beneficiaries.**    The Liquidator shall maintain at all times a register of the names, distribution addresses, amounts of allowed claims, and the ratable interests in the Liquidation Trust of the Beneficiaries (the "Register"). The initial Register shall be based on the list of holders of claims maintained by the Debtors' claims and noticing agent, as of the Effective Date. All references in this Trust Agreement to holders of beneficial interests in the Liquidation Trust shall be read to mean holders of record as set forth in the Register maintained by the Liquidator and shall exclude any beneficial owner not recorded on such Register. The Liquidator shall cause the Register to be kept at its office or at such other place or places as may be designated by the Liquidator from time to time.

**5.2    Books and Records.**    The Liquidator also shall maintain in respect of the Liquidation Trust and the Beneficiaries books and records relating to the Trust Assets and any income or proceeds realized therefrom and the payment of expenses of and claims against or assumed by the Liquidation Trust in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof. Except as expressly provided in this Trust Agreement, or as may be required by applicable law (including securities law), nothing in this Trust Agreement is intended to require the Liquidation Trust to file any accounting or seek approval of any court with respect to the administration of the Liquidation Trust, or as a condition for making any payment or distribution out of the Trust Assets. Any Beneficiary shall have the right to inspect the books and records of the Liquidation Trust at any time upon reasonable notice to the Liquidator, provided such Beneficiary shall have entered into a confidentiality agreement in form and substance reasonably satisfactory to the Liquidator. Satisfaction of the foregoing condition notwithstanding, if (a) the Liquidator and the Liquidation Trust Committee determine in good faith that the inspection of the Liquidation Trust's books and records, including the Register, by any Beneficiary would be detrimental to the Liquidation Trust

11

or (b) such Beneficiary is a defendant (or potential defendant) in a pending (or potential) action brought by the Liquidation Trust, the Liquidation Trust may deny such request for inspection.

## ARTICLE VI
## BENEFICIAL INTERESTS AND BENEFICIARIES

**6.1    Trust Beneficial Interests.**    Each Senior Lender and each holder of an undisputed, liquidated and fixed general unsecured claim (including (including those unsecured creditors holding priority claims pursuant to Section 502(a)(4)-(10) of the Bankruptcy Code) against the Debtors, shall be entitled to receive beneficial interests in the Trust.

**6.2    Interest Beneficial Only.**    Ownership of a beneficial interest in the Liquidation Trust shall not entitle any Beneficiary to any title in or to the Trust Assets or to any right to call for a partition or division of the Trust Assets or to require an accounting.

**6.3    Evidence of Beneficial Interest.**    Ownership of a beneficial interest in the Liquidation Trust shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidation Trust by the Liquidator, which may be the Register.

**6.4    Exemption from Registration.**    The parties hereto intend that the rights of the holders of the beneficial interests arising under this Trust Agreement shall not be "securities" under applicable laws, but none of the parties hereto represents or warrants that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws.

**6.5    Transfers of Beneficial Interests.**    Beneficial interests in the Liquidation Trust shall be nontransferable except upon death of the interest holder or by operation of law.

**6.6    Absolute Owners.**    The Liquidator may deem and treat the Beneficiary reflected as the owner of a beneficial interest on the Register as the absolute owner thereof for the purposes of receiving distributions and payments on account thereof for federal and state income tax purposes and for all other purposes whatsoever.

**6.7    Effect of Death, Dissolution, Incapacity, or Bankruptcy of Beneficiary.**    The death, dissolution, incapacity, or bankruptcy of a Beneficiary during the term of the Liquidation Trust shall not operate to terminate the Liquidation Trust during the term of the Liquidation Trust nor shall it entitle the representative or creditors of the deceased, incapacitated or bankrupt Beneficiary to an accounting or to take any action in any court or elsewhere for the distribution of the Trust Assets or for a partition thereof nor shall it otherwise affect the rights and obligations of the Beneficiary under this Trust Agreement or in the Liquidation Trust.

**6.8    Standing.**    Except as expressly provided in this Trust Agreement, a Beneficiary does not have standing to direct the Liquidator to do or not to do any act or to institute any action or proceeding at law or in equity against any party upon or with respect to the Trust Assets.

## ARTICLE VII
## DISTRIBUTIONS

**7.1     Distributions**.   The Liquidator shall make distributions under this Trust Agreement at such times and when he deems appropriate or when directed by the Liquidation Trust Committee; provided, that, to the extent available, the Liquidator shall make distributions under this Trust Agreement at least annually to the extent net proceeds (including net of reserves reasonably necessary to maintain the value of assets, meet trust claims and contingent liabilities (including disputed claims)) are available.   Except for distributions of certain Trust Assets pursuant to Sections 7.2 and 7.3, below, the Liquidation Trustee shall distribute One Hundred (100%) Percent of any Net Proceeds from the liquidation and recovery on Trust Assets to the Senior Lenders, on a pro rata basis.

**7.2     Distribution of Distribution Reserve**.   Promptly following the Effective Date, the Liquidator shall distribute the Distribution Reserve to Beneficiaries (other than the Senior Lenders), net of any costs and expenses associated with the reconciliation of the claims of such Beneficiaries and the general administration, processing and delivery of such distribution to such Beneficiaries.

**7.3     Distribution of Net Proceeds of D&O Claims**.   The Liquidator shall distribute Net Proceeds from the recovery of D&O Claims as follows:

(a)     95% to the Senior Lenders, on a pro rata basis.

(b)     5% to Beneficiaries, other than the Senior Lenders, on a pro rata basis.

**7.4     Distributions to Beneficiaries from Trust Assets.**   All payments to be made by the Liquidation Trust to any Beneficiary shall be made only in accordance with this Trust Agreement and from the Trust Assets (or from the income and proceeds realized from the Trust Assets) to the extent the Liquidator has proceeds sufficient to make such payments.

**7.5     Distribution Pending Resolution.**   At the election of the Liquidator: (i) no payment or distribution may be made with respect to any claim to the extent it is a disputed claim unless and until such disputed claim becomes an allowed claim appearing on the Register or (ii) interim distributions may be made to Beneficiaries appearing on the Register upon the Liquidator's establishment of a disputed claim reserve.

**7.6     Undeliverable Distributions**.   If any distribution is returned as undeliverable, the Liquidator may, in its discretion, make such efforts to determine the current address of the holder of the claim with respect to which the distribution was made as the Liquidation Trust deems appropriate.   Distributions that are not claimed by the expiration of one year from the Effective Date shall be deemed to vest or revest in the Liquidation Trust, and the claims with respect to which those distributions are made shall be automatically canceled.   All funds or other property that vests or revests in the Liquidation Trust pursuant to this Section shall be distributed by the Liquidator to the other Beneficiaries appearing on the Register in accordance with this Trust Agreement.

## ARTICLE VIII
## TAXES

**8.1** **Income Tax Status.** Consistent with Revenue Procedure 94-45, 1994-28 I.R.B. 124, the Liquidation Trust shall be treated as a liquidating trust pursuant to Treasury Regulation Section 301.7701-4(d) and as a grantor trust pursuant to IRC Sections 671-677. As such, the Beneficiaries will be treated as both the grantors and the deemed owners of the Liquidation Trust. Any items of income, deduction, credit, and loss of the Liquidation Trust shall be allocated for federal income tax purposes to the Beneficiaries.

**8.2** **Tax Returns.** In accordance with IRC Section 6012 and Treasury Regulation Section 1.671-4(a), the Liquidation Trust shall file with the IRS annual tax returns on Form 1041.

## ARTICLE IX
## TERMINATION OF LIQUIDATION TRUST

**9.1** **Termination of Liquidation Trust.** The Liquidator shall be discharged and the Liquidation Trust shall be terminated at such time as all of the Trust Assets have been distributed, and all duties and obligations of the Liquidator hereunder have been fulfilled; provided that the Liquidation Trust shall terminate on the fifth (5th) anniversary from the date hereof, unless such term is extended by the Liquidation Trust Committee based upon the facts and circumstances then existing.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

**10.1** **Amendments.** The Liquidator may, in consultation with the Members of the Liquidation Trust Committee, modify, supplement, or amend this Agreement.

**10.2** **Waiver.** No failure by the Liquidation Trust, the Liquidator, or the Liquidation Trust Committee to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

**10.3** **Cumulative Rights and Remedies.** The rights and remedies provided in this Trust Agreement are cumulative and are not exclusive of any rights under law or in equity.

**10.4** **No Bond Required.** Notwithstanding any state law to the contrary, the Liquidator (including any successor Liquidator) shall be exempt from giving any bond or other security in any jurisdiction other than as provided otherwise in this Trust Agreement.

**10.5** **Irrevocability.** This Trust Agreement and the Liquidation Trust created hereunder shall be irrevocable, except as otherwise expressly provided in this Trust Agreement.

**10.6** **Tax Identification Numbers.** The Liquidator may require any Beneficiary to furnish to the Liquidator its social security number or employer or taxpayer identification

number as assigned by the IRS and the Liquidator may condition any distribution to any Beneficiary upon the receipt of such identification number.

**10.7   Applicable Law.**  This Trust Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of laws.

**10.8   Severability.**  In the event that any provision of this Trust Agreement or the application thereof to any person or circumstance shall be determined to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provision to persons or circumstance, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

**10.9   Limitation of Benefits.**  Except as otherwise specifically provided in this Trust Agreement, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Trust Agreement.

**10.10   Notices.**  All notices, requests, demands, consents, and other communications hereunder shall be in writing and shall be deemed to have been duly given to a person, if delivered in person or by facsimile with an electromagnetic report of delivery or if sent by overnight mail, registered mail, certified mail, or regular mail, with postage prepaid, to the following addresses:

> If to the Liquidator:
>
> NHB Advisors, Inc.
> Ted Gavin, CTP
> 919 N. Market Street, Suite 1410
> Wilmington, DE 19801
> (302) 655-8997 x 151
>
> If to a Beneficiary:
>
> > To the name and distribution address set forth in the
> > Register with respect to such Beneficiary.

The parties may designate in writing from time to time other and additional places to which notices may be sent.

**10.11   Further Assurances.**  From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Trust Agreement, and to consummate the transactions contemplated hereby.

**10.12  Interpretation.**  The enumeration and Section headings contained in this Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Trust Agreement or of any term or provision hereof.  Unless context otherwise requires, whenever used in this Trust Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations, and corporations.  The words herein, hereby, and hereunder and words with similar import, refer to this Trust Agreement as a whole and not to any particular Section or subsection hereof unless the context requires otherwise.  Any reference to the "Liquidator" shall be deemed to include a reference to the "Liquidation Trust" and any reference to the "Liquidation Trust" shall be deemed to include a reference to the "Liquidator" unless the context otherwise requires.

**10.13  Counterparts.**  This Trust Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document. Delivery of an executed counterpart of this Trust Agreement by facsimile or email in pdf format shall be equally effective as delivery of a manually executed counterpart.

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers or representatives, all as of the date first above written.

**SENIOR LENDERS:**

**OFFICIAL COMMMITTEE OF UNSECURED CREDITORS:**

**[NAME OF ENTITY] AS LIQUIDATOR:**

**DEBTORS**

8069/32156-001 Current/17670297v3

Exhibit "C"

Form of Approval Order

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

In re:                                          )
                                                )
BUTLER SERVICES INTERNATIONAL, INC., *et*       )    Chapter 11
*al.*[1]                                         )
                                                )    Case No. 09-11914 (KJC)
                Debtors.                        )
                                                )    Jointly Administered
                                                )
                                                )    **Re: Docket No. ___**
                                                )
                                                )

## ORDER PURSUANT TO SECTIONS 105(a), 363, 365 AND 1112(b) OF THE BANKRUPTCY CODE, (A) APPROVING THE STIPULATION BY AND AMONG THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, MONROE CAPITAL MANAGEMENT ADVISORS LLC, AS AGENT FOR THE SECOND LIEN LENDERS, AND THE SECOND LIEN LENDERS, (B) AUTHORIZING THE CREDITORS' LIQUIDATION TRUST, (C) DISMISSING THE DEBTORS' CHAPTER 11 CASES, AND (D) GRANTING CERTAIN OTHER RELATED RELIEF

Upon the motion of Butler Services International, Inc., and its affiliated debtors and

debtors-in-possession in the above captioned Chapter 11 cases (collectively, the "*Debtors*") and

the Official Committee of Unsecured Creditors (the "*Committee*") pursuant to sections 105(a),

363, 365 and 1112(b) of the Bankruptcy Code, for an Order (i) approving the stipulation by and

among the Debtors, the Committee and Monroe Capital Management Advisors LLC as agent

(the "*Prepetition Second Lien Agent*") for Monroe Capital Advisors LLC and Garrison

Investment Group LLC (collectively the "*Prepetition Second Lien Lenders*" and, together with

the Prepetition Second Lien Agent, the "*Prepetition Second Lien Parties*") (the "*Settlement

Stipulation*"), (ii) dismissing the Debtors' Chapter 11 cases, and (iii) granting certain related

---

[1]     The Debtors in these cases, along with the last four digits of each of the Debtor's federal tax identification number, are: Butler Services International, Inc. (1282); Butler International, Inc. (4321); Butler of New Jersey Realty Corp. (7593); Butler Service Group, Inc. (2289); Butler Publishing, Inc. (1211); Butler Telecom, Inc. (3416); Butler Utility Service, Inc. (8023); Butler Services, Inc. (5420); and Butler Resources, LLC (3504).

relief (the "*Motion*")[2]; and this Court having reviewed the Motion and having conducted a hearing on the Motion, at which time the Debtors and all parties-in-interest were given an opportunity to be heard; and it appearing that, pursuant to Fed. R. Bankr. Pro. 2002(a), the notice of the Motion having been given to (a) the United States Trustee for the District of Delaware, (b) counsel to the Prepetition Second Lien Parties, [(c) all creditors], and (d) parties that have requested service of papers pursuant to Bankruptcy Rule 2002; and the Court finding that (A) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1335 and that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (B) notice of the Motion and the opportunity for a hearing thereon were adequate and appropriate under the circumstances and no other notice need be given, (C) the legal and factual bases set forth in the Motion constitute just cause for the relief granted herein, and (D) the requested relief in the Motion is in the best interests of the Debtors' estates and their creditors; and after due deliberation and sufficient cause appearing therefore, it is

ORDERED, ADJUDGED AND DECREED, THAT:

1. The Motion is hereby GRANTED.

2. The Debtors and the Committee are hereby authorized to enter into the Settlement Stipulation and the terms of the Settlement Stipulation are ratified, confirmed and approved.

3. The Committee and the Prepetition Second Lien Parties are hereby authorized to enter into that certain CREDITORS' LIQUIDATION TRUST AGREEMENT (the "Liquidation Trust"), a copy of which is attached to the Motion as Exhibit 1, and to take

---

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Settlement Stipulation.

all necessary steps to effectuate the terms of that agreement. The Committee is authorized to transfer the money in the Distribution Reserve (or the right to receive the funds) to the Liquidation Trust pursuant to the Liquidation Trust Agreement. The Liquidator is authorized to administer the Liquidation Trust and distribute the Trust Assets in accordance with the terms of the Liquidation Trust Agreement.

4.      The Debtors are hereby authorized and directed to take all necessary steps to effectuate the transfer of all Estate Assets to the Prepetition Second Lien Agent for the benefit of the Prepetition Second Lien Lenders, other than (x) the Winddown Reserve to be retained by the Debtors as a gift, exclusively for the payment of Chapter 11 administrative claims pursuant to the Budget, and (y) the Distribution Reserve to be paid to the Committee or its successor or assign, as a gift (the "*Relinquished Assets*").

5.      The Prepetition Second Lien Parties are hereby granted relief from the automatic stay to exercise rights and remedies to realize upon any and all of the Relinquished Assets. without further application to, or order of, this Court.

6.      The Debtors are authorized to use the Winddown Reserve in such amounts and for such items as set forth in the budget attached hereto as Exhibit A (the "Revised Budget") to pay the Budgeted sums, and are further authorized to resolve within the terms of the Revised Budget, in consultation with the Prepetition Second Lien Agent and without further order of this Court, any disputed Chapter 11 Administrative Claims. All amounts not ultimately used to pay the Budgeted sums shall first be used to fund the Distribution Reserve and the Debtors shall remit the balance, if any, to the Prepetition Second Lien Agent.

7. None of the Collateral, nor any Prepetition Second Lien Party, shall be subject to surcharge, pursuant to section 506(c) of the Bankruptcy Code or otherwise by the Debtors or any other party in interest.

8. Pursuant to section 1112(b) of the Bankruptcy Code, the Debtors' chapter 11 cases shall be dismissed upon certification of Debtors' counsel that the reallocation and funding of the Winddown Reserve and Distribution Reserve have occurred and any then accrued and unpaid (i) Chapter 11 administrative claims (other than those subject to allowance by the Court) which are not disputed and (ii) then accrued and unpaid fees of the Office of the United States Trustee have been paid, or adequate reserves created.

9. The provisions of this Order, and the Settlement Stipulation, shall be binding upon and inure to the benefit of the Debtors, the Prepetition Second Lien Parties, the Committee, and their respective successors, trustees and assigns, including any trustee hereafter appointed for the estate of any of the Debtors. Such binding effect is an integral part of the Settlement Stipulation and this Order.

10. The provisions of this Order and the authorizations contained herein, and any actions taken pursuant hereto, and any actions authorized and approved by this Court during the pendency of the Debtors' Chapter 11 cases shall survive entry of any order dismissing any of the Debtors' cases.

11. This Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon the entry thereof.

12. To the extent there is any conflict between the provisions of this Order and the Settlement Stipulation, the provisions of this Order shall control.

13. If an order dismissing or closing any of the Debtors' cases at any time is entered, such order shall provide that this Court shall retain jurisdiction, notwithstanding any such dismissal or closure, for the purposes of enforcing the Settlement Stipulation and this Order.

14. All insurance companies are authorized and directed to pay Monroe Capital Management Advisors LLC as agent for the Prepetition Second Lien Lenders any and all recoveries on account of all cash, collateral funds, return premiums, return deductible reimbursement funds, return loss deposit funds, return claim fees and any other proceeds from any and all insurance policies and insurance programs where Butler International Inc. or any of its subsidiaries was a named insured. Pending dismissal of these cases, the Debtors are authorized to execute and deliver, as requested by the Second Lien Parties, letters to such insurance companies notifying the insurance companies that the Prepetition Second Lien Agent (and any consultant retained by the Prepetition Second Lien agent) is authorized to act on behalf of any of the Debtors in connection with all insurance matters and should be treated by such insurance companies in the same manner as employees of the insured.

15. The professionals retained by the Debtors and the Committee in these cases shall on or before March 25, 2010, file final fee applications covering all fees incurred during these cases through February 28, 2010, together with a good faith estimate of fees and expenses expected to be incurred between February 28, 2010 and the date of submission of the Dismissal Order. A hearing to consider the Final Fee Applications shall be held by the Court on _____, 2010, at ___:_____ ___.m. (the "Final Fee Hearing"). At least

three business days prior to the Final Fee Hearing, the professionals shall file with the

Court, supplements that update the estimated fees included in their respective Final Fee

Applications.

Dated: March ___, 2010

_____
Honorable Kevin J. Carey
Chief United States Bankruptcy Judge